**Thomas C. IGO, Jr. and Dorothy E. Igo, Plaintiffs–Appellees,**

**v.**

**COACHMEN INDUSTRIES, INC. (SPORTSCOACH CORP. OF AMERICA DIVISION), Defendant–Appellant,**

**J.R. Payne Custom Van and RV's, Inc., Defendant.**

**No. 90–3506.**

United States Court of Appeals, Sixth Circuit.

Argued March 22, 1991.

Decided July 10, 1991.

---

Philip Zimmerman (argued), Cleveland, Ohio, for plaintiffs-appellees.

R. Patrick Baughman, Alys M. Portman (argued), Baughman & Associates, Cleveland, Ohio, for defendant-appellant.

Before MILBURN and BOGGS, Circuit Judges, and GILMORE, District Judge.[*]

GILMORE, District Judge.

In this appeal from a $325,000 jury verdict, the outrageous conduct of Plaintiffs' attorney and the failure of the district judge to recognize that under Ohio law there was no basis for recovery require reversal. In addition, the trial of this case resulted in a complete miscarriage of justice, because the district judge failed to control the proceedings, and Defendant's counsel failed to object when inflammatory and inadmissible matter was put before the jury.

[*] The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I

Coachmen Industries, Inc. appeals a $325,000 jury verdict in a personal injury action involving a motor home that Coachmen sold to Plaintiffs, Thomas C. and Dorothy E. Igo. In March 1983, Thomas Igo purchased the motor home from Coachmen for $82,000, including options. A year later, on April 6, 1984, the Igos and four companions were travelling in the motor home from Cleveland to Columbus to attend a Kiwanis Club dinner meeting. While they were proceeding down Interstate 77 at 55 mph, the steering wheel came off in Mr. Igo's hands. He brought the vehicle to rest safely in the median strip; no one was injured. He reattached the steering wheel to the column with tools he had with him, and safely drove to the dinner and home again.

After the incident, the Defendant and Plaintiffs worked together to repair the vehicle damage, which included damage to the steering column and damage to the structure of the motor home. In the next four years, from 1984 until nearly 1988, the Igos travelled 36,000 miles in the same vehicle without incident.

In April 1986, the Igos filed suit, alleging negligence, strict liability and breach of warranty. They claimed property damage, physical injuries and emotional harm, including post-traumatic stress disorder. Coachmen admitted liability.

Prior to trial, the district court considered two motions in limine brought by Coachmen. In the first, Coachmen asked that evidence of a 1984 recall be excluded because Coachmen had already admitted liability. The court granted this motion. In the second motion, Coachmen challenged the Plaintiffs' ability to lay a proper foundation for admission of invoices, receipts and other proofs of damages to the motor home without the testimony of a mechanic or other expert. This motion was deferred by the court until Plaintiffs offered the exhibits into evidence. At that time, the court admitted the exhibits even though no expert had testified.

The case was tried to a jury in March 1989. At the close of the proofs, the court denied Coachmen's motion for a directed verdict. The jury then returned a verdict of $325,000, awarding $70,000 for damage to the motor home, $200,000 for mental or emotional injury to Mr. Igo, and $55,000 for mental or emotional injury to Mrs. Igo. In answer to special interrogatories, the jury found that neither Mr. nor Mrs. Igo had suffered post-traumatic stress disorder, which was the only injury testified to by an expert. Defendant's motions for new trial and JNOV were denied by the trial court.

## II

Coachmen raises several issues on appeal:

1) that the court abused its discretion in denying its motions for JNOV and new trial, because the verdict was excessive and resulted from passion and prejudice induced by improper conduct of opposing counsel;

2) that the court erred in denying its motions for JNOV and new trial, because the jury's answers to interrogatories were inconsistent;

3) that the court abused its discretion in denying its motions for directed verdict and JNOV, because there was no proof of a "severe and debilitating" emotional injury as required by Ohio law;

4) that the court erred in denying its motions for directed verdict and JNOV, because, under Ohio law, there was insufficient evidence for the jury to determine the fair market value of the motor home after the incident; and

5) that the court erred in admitting, over its authentication and hearsay objections, Plaintiffs' Exhibits 5, 6, 7, 8, 9, 12, 13, 14, 16, and 17, all of which were invoices and receipts for vehicle repairs.

## III

### A. Counsel Misconduct.

█ In reviewing this case, the court begins with the outrageous conduct of Plaintiffs' attorney, and the inadequate re-

sponse thereto by the trial court and defense attorney.

Coachmen contends that misconduct by Plaintiffs' counsel throughout the course of the trial justified granting Coachmen's motions for JNOV or new trial because such action resulted in an excessive verdict based on passion. Although we find adequate basis for reversing the jury verdict in its entirety on other grounds, *infra*, nevertheless, we consider counsel's conduct and the failure of the court to properly control him an independent ground for reversal.

The misconduct of Plaintiffs' counsel, Mr. Zimmerman, was pervasive. First, after the district court had granted a motion in limine excluding all references to the 1984 recall of the motor home, Plaintiffs' counsel referred to the recall before the jury. Although Plaintiffs' counsel assured this court in oral argument that information regarding the recall simply slipped out in cross-examination, the record indicates, to the contrary, that his reference was direct and deliberate.[1] This court believes that Plaintiffs' counsel deliberately injected the recall information into the trial because, previously, on direct examination of Mr. Igo, Plaintiffs' counsel attempted to

ask about the recall, but was cut off by Defendant's objection.[2] The trial court took no action to reprimand counsel or to strike the reference from the record.

During the course of the trial, counsel referred to the relative wealth of Coachmen, obviously to demonstrate that Coachmen could pay a big verdict. Twice in closing argument, he referred to Coachmen as a "billion-dollar corporation."[3] Defense counsel made no objection, and the trial court took no action to stop this blatant, inappropriate argument.

More troubling to this court, however, are the wild, unsubstantiated attacks Plaintiffs' counsel made against Coachmen. For example, Plaintiffs' counsel said in his opening statement: "Coachmen made us fight for five years and 11 months until we got into this courtroom." (Record, p. 95). The fact of the matter is that Plaintiffs themselves delayed two years before filing their lawsuit, and Plaintiffs' attorney, not the Defendant, was sanctioned for dilatory conduct. (Record, p. 24). In addition, Plaintiffs' counsel stated in closing that the Defendant had hoped that the Igos would not survive long enough to go to trial.[4] He then stated that Defendant was only sorry that Plaintiffs had survived the accident.[5]

---

1. In cross-examination of Defendant's witness Mr. Broecker, an employee of Coachmen who inspected the motor home, Plaintiffs' attorney asked directly:
   Q. Are you aware, sir, that a Government made a recall notice [sic].
   Appellant's counsel then objected, but the information was before the jury. (Record, p. 121).

2. Plaintiffs' counsel asked:
   Q. Mr. Igo, as a result of what happened to you on April 6th, 1984, did the government of the United States of America issue an order—
   Defendant's counsel then objected. (Record, p. 104).

3. Counsel stated in closing argument:
   The opposition is interested in money. They are going to save that money.
   But they are not going to save that money, folks, if you have anything to say about it.
   Mr. Igo and his wife and the other passengers lived, and Mr. and Mrs. Igo and Tony LaRiche lived, and they took the stand against the billion-dollar defendants, and, ladies and gentlemen of the jury, they are not quitting. (Record, p. 140).

He subsequently stated:
   But we do have a chance against a billion-dollar corporation, and we do have our day in court.
(Record, p. 144).

4. He stated:
   Ladies and gentlemen of the jury, they forced us to go through this horrendous ordeal, and believe me it is not easy to go through a trial and they don't need this at their age.
   I have no doubt that the opposition was hoping they wouldn't be here to take the stand before the trial came up, but they are here and they are looking you in the eye and they are fighting for their rights, and they will never quit because you wronged them, didn't treat them fairly; you used every device to frustrate their day in court (directed to the defendants), and that's why it took all this time.
(Record, p. 132).

5. Counsel stated:
   I say this without equivocation. There is no doubt whatsoever in my mind that the defen-

Worse yet, Plaintiffs' counsel stated that Mr. Igo had saved Defendant the cost of six wrongful death actions.[6] Finally, in an open invitation to abandon impartiality, Mr. Zimmerman asked the jury, "[H]ow much would you pay not to go through this experience and trial?" (Record, p. 136).

■ The conduct of Mr. Zimmerman so tainted the trial of this case that it alone could be the basis for reversal, were there not numerous errors committed by the trial court, which will be discussed *infra*. To compound the errors of the court and the extreme misbehavior of Plaintiffs' counsel, opposing counsel did nothing to object to most of Mr. Zimmerman's statements. When asked by this court in oral argument why she did not object to some of these statements, Defendant's counsel said she felt persistent objections might put her in a bad light before the jury. It is clear to this court, however, that she had an absolute obligation to object, and erred in not doing so.

■ Moreover, the district court erred in not controlling Plaintiffs' counsel's outrageous behavior. A trial court cannot sit quietly while counsel inflames the passions of the jury with improper conduct, even if opposing counsel does not object. The trial court should have censured and stopped this conduct.

■ As a final word, this court cannot let pass what appears to be the unprofessional conduct of Plaintiffs' attorney, Mr. Zimmerman. We are well aware of our responsibility under Canon 3(B)(3) of the Code of Judicial Conduct for United States Judges. That section of the Code provides: "A judge should take or initiate appropri-ate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware."

It appears to this court that the behavior of Plaintiffs' counsel merits investigation by the Ohio State Bar Association. The Ohio Supreme Court adopted the Code of Professional Responsibility on October 5, 1970. Provisions of that Code that may have been violated include:

1. DR 7–106(A): A lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding . . . .

2. DR 7–106(C): In appearing in his professional capacity before a tribunal, a lawyer shall not:

(1) State or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence.

(2) Ask any question that he has no reasonable basis to believe is relevant to the case and that is intended to degrade a witness or other person.

\* \* \* \* \* \*

(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant . . . .

\* \* \* \* \* \*

(6) Engage in undignified or discourteous conduct which is degrading to a tribunal.

(7) Intentionally or habitually violate any established rule of procedure or of evidence.

---

dants are bitterly disappointed that anybody survived that accident. Those are pretty harsh words, but they are accurate because if the motor home had gone over the guard rail and down the ravine and they were all killed and the investigators found the wheel, the steering wheel loose, they no doubt would have blamed it on the crash, and it never would have even occurred to them to look for a missing spring clip.
(Record, pp. 143–44).

**6.** Counsel asserted in his closing argument:
But they should be concerned, and they should be grateful to Mr. Igo because Mr. Igo saved the lives of six people. If he hadn't had the presence of mind to do what he did the defendants would be confronted with enormous claims for serious personal injuries and/or death.
With my experience with six people and under these circumstances, I don't think it would be unreasonable for a jury to bring in about $3 million for each of those people, so it would be $18 million of claims that they would be confronted with.
(Record, p. 128).

In light of these potential violations, it appears to this court that an investigation should be conducted by the appropriate disciplinary body of the Ohio State Bar Association. Therefore, in fulfilling our duty under Canon 3(B)(3) of the Code of Judicial Conduct for United States Judges, we direct the Clerk of Court to send a copy of this opinion to the proper disciplinary authority of the Ohio State Bar Association.

### B. Mental or Emotional Injury

Coachmen makes two arguments regarding mental or emotional injury: first, that the court erred in denying its motions for JNOV and new trial, based on the jury's inconsistent answers to interrogatories; and second, that the court erred in submitting the question of emotional injury to the jury when the evidence was insufficient under Ohio law.

This court applies the same standard to a denial of a motion for JNOV as the district court does in considering the original motion, that is "[whether] the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict...." *Brady v. Southern Ry. Co.,* 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943); *Langenderfer, Inc. v. Johnson,* 917 F.2d 1413, 1419 (6th Cir.1990). "[T]he court must view the evidence in the light and with all reasonable inferences most favorable to the party who secured the jury verdict." *Portage II v. Bryant Petroleum Corp.,* 899 F.2d 1514, 1523 (6th Cir.1990), *reh. denied en banc,* 1990 WL 37809, U.S. App.Lexis 10105 (6th Cir.1990). This court reviews denial of a motion for new trial under an abuse of discretion standard. *Baker Perkins, Inc. v. Midland Moving & Storage Co.,* 920 F.2d 1301, 1308 (6th Cir. 1990).

The interrogatories and answers that Coachmen challenges are as follows:

*INTERROGATORY NO. 4:*

Do you find by a preponderance of the evidence that Thomas C. Igo, Jr., suffered mental and/or emotional injury?

Answer: YES

*INTERROGATORY NO. 5:*

If the answer to interrogatory No. 4 is "yes," do you find by a preponderance of the evidence that the plaintiff, Thomas C. Igo, Jr., suffered post-traumatic stress disorder?

Answer: NO

*INTERROGATORY NO. 7:*

Do you find by a preponderance of the evidence that Dorothy E. Igo suffered mental and/or emotional injury?

Answer: YES

*INTERROGATORY NO. 8:*

If the answer to interrogatory No. 7 is "yes," do you find by a preponderance of the evidence that the plaintiff, Dorothy E. Igo, suffered post-traumatic stress disorder?

Answer: NO

(Record, pp. 37–38, 40–41).

Coachmen argues that the answers to the interrogatories are inconsistent because the only evidence of mental or emotional injury presented by Plaintiffs concerned post-traumatic stress disorder (PTSD). According to the interrogatories, the jury found that Plaintiffs did not suffer PTSD. Therefore, there was no evidence to support a verdict based on mental or emotional harm.

Plaintiffs' only expert was Dr. Monroe Arlen, a medical doctor with specialized training in psychiatry, who defined PTSD and testified that the Igos suffered from it.[7] Dr. Arlen did not discuss or diagnose

---

**7.** Dr. Arlen testified that: 1) a person must experience an event outside the range of normal human experience which poses a threat to one's life; 2) a person then reexperiences the event in nightmares, sudden feelings that the event is recurring, intense psychological distress at exposure to circumstances that symbolize the event; 3) a person must show persistent avoidance of the stimuli associated with the trauma; 4) a person must have persistent symptoms of increased arousal; and 5) a person has a physiologic reaction. He indicated that the event involved in this case was sufficient, that Mr. Igo reported recurrent recollections and nightmares, and that though Mr. Igo would drive the vehicle, he would not drive on highways. (On cross examination, he stated that he was unaware of long trips taken by the Igos after the event.) Dr. Arlen pointed to arousal in Mr. Igo's occasional sleeplessness, irritability, and

generalized emotional distress or psychiatric injury. When Plaintiffs' counsel was asked by this court in oral argument to identify any evidence that could support a verdict based on mental or emotional harm separate from PTSD, counsel identified the testimony of Dr. Rizk, a psychiatrist called by Coachmen. The testimony to which counsel referred was taken from the trial transcript; it was not included in the record presented to this court. Dr. Rizk examined the Igos, and his testimony was as follows:

A. I did not write a report, but my opinion at the time that if the question is post traumatic stress disorder, that he did not suffer from that, him or his wife of post traumatic stress disorder [sic].

Q: Did you find that they were suffering from some other psychiatric disorder?

A: Some anxiety symptoms but not an anxiety diagnosis.

(Transcript, vol. II, p. 55).

There is no probative evidence in the record that the Plaintiffs suffered mental or emotional harm from the accident. Although Mr. Igo testified that he gets a rash on his hand from driving or thinking about the motor home, as discussed *infra,* no expert explained or supported this testimony.

■ It is settled precedent that a court should construe answers to interrogatories as consistent with the verdict whenever possible. *Gallick v. Baltimore & Ohio R. Co.,* 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963). The only way to construe the verdict as consistent with the answers to interrogatories is to determine that the jury awarded damages for general emotional and mental harm, when, as discussed *infra.,* the evidence of such harm was insufficient even to give rise to a jury question. It is the opinion of this court that the answers to the interrogatories can

be read consistently, but, for reasons discussed *infra,* the jury award based on general emotional or mental harm will be reversed.

■ Coachmen's second challenge to the mental and emotional damages awarded by the jury is that the evidence of such harm was insufficient even to reach the jury.

"Ohio law has traditionally permitted recovery for negligently inflicted emotional and psychiatric injuries accompanied by contemporaneous physical injury." *Binns v. Fredendall,* 32 Ohio St.3d 244, 245, 513 N.E.2d 278 (1987). In the instant case, the jury found that Plaintiffs did not suffer physical injury.[8] Where a plaintiff seeks to recover for emotional or psychiatric injury alone, "plaintiffs [are] limited to only those which are 'severe and debilitating' to a reasonable person." *Id.,* quoting *Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759 (1983); *Schultz v. Barberton Glass Co.,* 4 Ohio St.3d 131, 447 N.E.2d 109 (1983). Before the question of emotional harm absent physical injury may even reach the jury, "[t]he court first determines as a matter of law whether there was proof of emotional distress that was more than trifling, mere upset, or hurt feelings." *Binns, supra,* 32 Ohio St.3d at 245, n. 1, 513 N.E.2d 278.

As detailed *supra,* the only evidence of emotional harm separate from PTSD was Mr. Igo's testimony of a rash and Dr. Rizk's statement that the Igos showed some anxiety symptoms. Any claim of emotional harm resulting from seeing or driving the motor home was vastly undercut by Mr. Igo's testimony that he drove the motor home 36,000 miles in the four years after the accident. Moreover, the Igos did not seek or receive treatment for emotional harm. Dr. Rizk's testimony clearly showed that the accident caused the

---

outbursts of anger. Finally, he pointed to a physiologic reaction in that Mr. Igo had heart and stomach problems, high blood pressure and thyroid insufficiency. No treating physician supported these claims.

As to Mrs. Igo, Dr. Arlen testified that she reported having nightmares, tension and anxiety symptoms and had lost enjoyment in riding

in the vehicle. (Record, p. 123, transcript, vol. II, pp. 5–29).

8. Interrogatories 3 and 6 asked: "Do you find by a preponderance of the evidence that the plaintiff ... suffered physical injury?" for Mr. and Mrs. Igo, respectively. The jury answered "no" to each interrogatory. (Record, pp. 36, 39).

Igos only "[s]ome anxiety symptoms," but no anxiety-related psychiatric diagnosis.

As a matter of law, the proof fails to show emotional distress that is more than trifling. The trial court failed to analyze the evidence appropriately and erred in denying Coachmen's motion for JNOV. Accordingly, this court reverses the jury verdict as to mental or emotional injury to both the Plaintiffs.

### C. Devaluation of and Damage to the Motor Home

■ Coachmen raises two arguments regarding the motor home: first, that Plaintiffs adduced insufficient evidence regarding the market value of the motor home after the incident to create a jury question, thus making the court's denial of Defendant's motions for directed verdict and JNOV error; and second, that the court erred in admitting repair invoices that were hearsay and that lacked foundation. Coachmen prevails on these arguments.

■ The standard for reviewing a denial of a motion for directed verdict is the same as that for JNOV, and is stated *supra*, pp. 655–656. Under Ohio law, the general rule is that the measure of damages for injury to personal property is the difference between fair market value immediately before the damage and fair market value immediately after the damage. Where personal property is completely destroyed, the measure of damages is the reasonable market value of the personalty immediately before its destruction. *Executive Jet Aviation, Inc. v. United States,* 507 F.2d 508, 513 (6th Cir.1974). When market value cannot be realistically determined, courts consider "the standard of value to the owner." *Bishop v. East Ohio Gas Co.,* 143 Ohio St. 541, 546, 56 N.E.2d 164 (1944). Under this approach, value is determined by reference to factors such as original cost, replacement cost, salvage value, fair market value at the time of the accident and value of the property to the owner. *Cooper v. Feeney,* 34 Ohio App.3d

282, 518 N.E.2d 46 (1986). Nevertheless, Ohio courts do not consider an owner's opinion alone sufficient, and have not upheld verdicts when the only evidence of value is the owner's opinion. *Shimola v. Nationwide Ins. Co.,* 25 Ohio St.3d 84, 495 N.E.2d 391 (1986); *See Trikilis v. M.J.L. Truck Sales, Inc.,* No. 1807, 1990 WL 27169 (Court of Appeals of Ohio, Medina County, March 7, 1990) (affirming trial court's grant of directed verdict for defendant).

Plaintiffs' only evidence regarding the value of the motor home was Mr. Igo's testimony that just before the incident, the motor home was worth $77,000, but immediately after the incident it was worth nothing. (Record, p. 98). He reasoned that the motor home was worth nothing, because he thought it should be replaced with a new motor home, it was damaged, and he would not want anyone else to buy it. (Record, pp. 98–99). No expert testified for Plaintiffs regarding the motor home's condition, replacement cost, salvage value or fair market value after the incident.[9] Despite Mr. Igo's testimony that he considered the motor home worth nothing after the incident, he also testified that in the four years following the incident, he drove the motor home an additional 36,000 miles. (Record, p. 116).

Mr. Igo's opinion about the value of the motor home was, under Ohio law, insufficient to create a jury question. This is all the more so when his testimony was contradictory. The trial court recognized the weakness of Plaintiffs' evidence. On the record, in ruling on the motions for JNOV and new trial, the court indicated:

> The one area, as I recall from the verdict forms and the findings, is the damage to the vehicle that came up to $70,000. He said it was worthless, something about he paid 80 something for it, put in 5, and anyway he said it was worthless.
>
> And then there was no real expert testimony. There was some testimony

---

9. In contrast, Defendant presented the expert testimony of William Broecker, who inspected the motor home in 1987. He determined that

the motor home showed no damage that would result in significant devaluation. (Record, p. 147).

about he had a few bills, about some minor repairs. There wasn't what I call the kind of expert testimony in order to have about showing damage [sic].

(Record, p. 146). Nevertheless, the court allowed the issue of damage to the motor home to go to the jury. In light of the evidence and Ohio law, that decision was error.

■ Similarly, the court erred in admitting invoices to substantiate damage to the motor home, because they were hearsay and lacked foundation.

Mr. Igo testified on direct examination about repair costs to the motor home.[10] (Record, pp. 106–113). The record suggests that Mr. Igo went through a pile of invoices and indicated whether the repair was incident to the accident and whether he had been reimbursed for the cost. It is obvious from the record that the invoices were not properly prepared as exhibits. Some represented repairs that predated the accident. Some counsel did not seek to admit, because Mr. Igo testified that they had nothing to do with the incident.[11] Some were illegible. Plaintiffs' counsel did not present the testimony of a mechanic or other expert in support of Mr. Igo's opinion that the repairs represented by the invoices were incident to the accident; counsel did not produce a witness who had prepared the invoices.

Moreover, the court clearly recognized that the exhibits were inadmissible, but admitted them anyway over Defendant's hearsay, foundation and best evidence objections.[12]

It is clear that the invoices admitted by the district court were hearsay. Counsel did not present proper testimony to bring them within the business record exception. Fed.R.Evid. 803(6). As this court made clear in *Redken Laboratories, Inc. v. Levin*, 843 F.2d 226, 229 (6th Cir.1988), *cert. denied sub nom., Levin v. Redken Laboratories*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988):

> We note that for a business record to be admissible under Rule 803(6), Federal Rules of Evidence, the record must satisfy four requirements: (1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

**10.** The transcript includes the following bench conference, in part, prior to Mr. Igo's testimony:

> Defendant: I would like to make an objection to all of the documents on the basis you do not have anyone to lay a foundation. You don't have a mechanic, you don't have someone from the business to authenticate it.
> Plaintiffs: They are accurate.
> Defendant: Beyond that, for instance, this one is dated prior to the incident.
> Plaintiffs: We will take it out of there. I make mistakes, too.
> Defendant: The objection is raised on hearsay and lack of foundation.
>
> \*     \*     \*     \*     \*     \*
>
> The Court: I'll let him testify, go ahead.

(Record, p. 106).

**11.** For example, the record shows the following exchange:

> Q: Plaintiff's Exhibit 10, what's this?
> A: This is from the Sportscoach Camping World on 12/8/84. It says it's not the accident, not due to the accident.

> Q: Good, I appreciated your honesty, let's forget that. What about this Camping World? You tell me, what's the number, Plaintiff's Exhibit 11, is this due to the accident in any way?
> A: No, sir.
> Q: How about Plaintiff's Exhibit 12?
> A: 4/2/85, the alignment of the headlights we thought was due to the accident. We don't drive at night.

(Record, pp. 110–11)

**12.** The record reflects the following:

> Defendant: I am objecting to the invoices to which Mr. Igo testified on three bases.
> One, is that they are hearsay because we don't have the mechanic or someone from the business.
> We don't have a foundation and it's not the best evidence; for those reasons I object.
> The Court: How much do they add up to?
> Plaintiffs: A couple thousand dollars.
> The Court: You are technically right, but I'll overrule the objections.

(Record, p. 122).

*Id.* at 229 (citation omitted). There is no question that counsel did not present evidence to satisfy these four requirements. Furthermore, counsel did not attempt to bring the evidence in under other possible exceptions.

The reviewing court gives substantial deference to trial court rulings on evidence. Fed.R.Evid. 103(a)(1). Nevertheless, this court determines that the district court, having recognized that the exhibits were inadmissable, erred in admitting them. Because the invoices were the only documentary evidence of damage to the vehicle, the harm to Defendant is clear.

Plaintiffs' counsel presented insufficient and inappropriate evidence of the value of the motor home and damages thereto to bring the issues of damage and devaluation before the jury. Accordingly, this court reverses the jury verdict as to damage to and devaluation of the motor home.

### IV

As delineated above, it is clear that the conduct of Plaintiffs' counsel was so outrageous as to warrant reversal of the verdict and remand for new trial. However, the evidence of damages, both to the Plaintiffs and to the motor home was clearly insufficient, as a matter of law, to support submission of the questions to a jury or denial of Defendant's motion for JNOV. On that basis, the verdict is reversed, and no remand is necessary. Finally, for the reasons stated *supra*, pp. 652–655, the Clerk of this court is directed to send a copy of this opinion to the appropriate disciplinary body of the Ohio State Bar Association.