**James P. CONDE, et al., Plaintiffs,**

v.

**VELSICOL CHEMICAL CORP., Defendant.**

Civ. A. C–2–85–638.

United States District Court, S.D. Ohio, E.D.

Dec. 28, 1992.

David Kopech, Columbus, OH, for plaintiffs.

David Greer, Dayton, OH, Joe G. Hollingsworth, Bruce J. Berger, Bonnie J. Semilof, Washington, DC, for defendant.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

### I. *Introduction*

This is a products liability action arising from the alleged misapplication of the termiticide Gold Crest C–100, manufactured by defendant Velsicol Chemical Corporation to the plaintiffs' newly constructed home in Pomeroy, Ohio. This matter is now before the Court on Velsicol's motions for summary judgment.

On October 13, 1992, the Court issued a lengthy Opinion and Order which granted Velsicol's motions for summary judgment on medical causation and product defects claims. The Court also ruled on numerous evidentiary motions concerning the admissibility of scientific evidence and theories as well as considering the admissibility of certain documentary evidence. Finally, the Court denied Velsicol's motion for summary judgment on property damage claims finding a conflict of material fact about whether the Conde home has suffered compensable property damage. See *Conde v. Velsicol Chemical Corp.*, 804 F.Supp. 972 (S.D.Ohio 1992). Perhaps the most important holding in the October 13 Opinion and Order was the Court's conclusion that plaintiffs have failed to offer opinion testimony admissible under Rules 702 and 703, Fed.R.Evid. from which a jury could find by a preponderance of the evidence that the Condes' exposure to chlordane caused their symptoms and diseases.

The October 13 Opinion and Order noted the plethora of motions filed by Velsicol but only ruled on eleven of the twenty one motions then pending. Thereafter, in a Status Order issued October 27, 1992, the Court requested that the parties file statements regarding the remaining claims in the litigation. The parties have now complied with that Order and the remaining motions are now ripe for final disposition. This Opinion and Order addresses the remaining issues concluding that defendant is entitled to summary judgment on all of the remaining claims.

Plaintiffs' response to the Status Order states that three issues remain in this litigation:

Property damage to the Condes' home and personal property caused by Gold Crest C–100 which is a defective product under the consumer expectation test pursuant to Ohio law.

Psychological injury to the Condes as a result of their property being rendered uninhabitable by Gold Crest C–100 necessitating that the family move from their home and relinquish their belongings.

Punitive damage based on the facts and Ohio law.

Plaintiffs' Response to Status Order at 1. Additionally, plaintiffs suggest that the Court stay this action pending the resolution of an appeal now before the Supreme Court of the United States. The Court will first consider the propriety of staying this action and then proceed to the substantive issues.

## II. *Plaintiffs' Request for Stay*

■ Plaintiffs suggest this action be stayed pending the resolution of *William Daubert v. Merrell Dow Pharmaceuticals, Inc.*, No. 92–102 cert. granted —— U.S. ——, 113 S.Ct. 320, 121 L.Ed.2d 240 (1992) (case below 951 F.2d 1128 (9th Cir.1991)), a bendectin birth-defects case now before the U.S. Supreme Court. The issue in *Daubert* is what should be the proper standard for evaluating scientific evidence under Rules 702 and 703 of the Federal Rules of Evidence. Considering the record in this case it does not appear that a stay is appropriate here. Although the *Daubert* case presents an issue which is central to this case, the Court has already extensively evaluated the medical causation issues involved in this litigation. See October 13 Opinion and Order, 804 F.Supp. at 994–1026. Further, the specific holding in *Daubert* turned on whether the plaintiffs' expert had subjected his opinions to peer review. 951 F.2d at 1130–31. That issue was not controlling in the present case. The fact that the Court reached a conclusion unfavorable to plaintiffs does not justify further delay in this five year-old case while the Supreme court case is pending. Absent a showing that the "interest of judicial economy and fairness" would otherwise be served, a stay is unwarranted. *Jonathan Club v. City of Los Angeles*, 680 F.Supp. 1405, 1407 (D.C.Cal.1988) (citing *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936)).

## III. *Motions for Summary Judgment*

Turning to the substantive issues, the Court will first consider defendant's Motion for Summary Judgment on Set–Off and Third Party Causation relating to plaintiffs' property damage claims. Second, the Court will consider plaintiff's psychological injury claims in light of the holding in the October

13 Opinion and Order that plaintiffs offer no medical causation testimony from which a jury could conclude by a preponderance of the evidence that the Condes' exposure to chlordane caused their symptoms and diseases. Finally, we will consider the question of whether assessment of punitive damages against defendant is appropriate under the circumstances of this case.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner,* 570 F.2d 107, 111 (6th Cir.1978). Summary judgment, therefore, will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In a motion for summary judgment, the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *accord Adams v. Union Carbide Corp.,* 737 F.2d 1453, 1455–1456 (6th Cir. 1984). The moving party is entitled to summary judgment "where it is quite clear what the truth is and where there are no unexplained gaps in documents submitted by the moving party pertinent to material issues of fact." *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *accord County of Oakland v. Berkley,* 742 F.2d 289, 197 (6th Cir. 1984); *Adickes,* 398 U.S. at 157–60, 90 S.Ct. at 1608–10; *Smith v. Hudson,* 600 F.2d 60, 65 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

If the moving party meets its burden and if adequate time for discovery has been provided, the opposing party is required to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof as well. *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The mere existence of a scintilla of evidence in support of the opposing party's motion will be insufficient; plaintiff "must set forth *specific facts* showing that there is a genuine issue for trial." *Davis v. Robbs,* 794 F.2d 1129, 1130 (6th Cir.1986) (emphasis in original). A party may not rest on the allegations contained in his pleadings to overcome a properly supported motion for summary judgment. *First National Bank v. Cities Service Co.,* 391 U.S. 253, 259, 88 S.Ct. 1575, 1577, 20 L.Ed.2d 569 (1968) (footnote omitted).

### A. Property Damage

■ In the October 13 Opinion and Order the Court ruled that summary judgment on plaintiff's property damage was improper because genuine issues of material fact existed as to whether plaintiffs' property had been damaged.[1] Velsicol now argues that the Court's actions in granting summary judgment on plaintiffs' product defect and medical causation claims necessarily requires the Court to grant summary judgment as well on plaintiffs' property damage claims. Velsicol raises two arguments in support of its motion. Each will be discussed seriatim below.

First, Velsicol argues that plaintiffs have already received more from their settlement with Swat (the termiticide applicator) than they could possibly receive from Velsicol after trial. Plaintiff's assert that the total dollar value of their home, as reflected in the October 13, Opinion and Order, does not reflect the true value of their loss. Accepting the plaintiffs' statement of their home's value as true, it is clear that damages could

---

1. In the prior motion for summary judgment on property damage claims, defendant had *only* argued that plaintiffs' home had not been damaged. The Court concluded that admissible evidence existed which suggested that plaintiffs' home had, in fact, been damaged. See October 13, Opinion and Order, 804 F.Supp. at 1026–1029.

be recovered by the Condes if it could be shown that Velsicol was responsible for the property damage suffered by the Condes. However, as set out in detail below, the Court concludes the plaintiffs are unable to recover from Velsicol because they cannot show that Gold Crest C–100 is a defective product and that, even if the product is defective, that it is the cause in fact of any property damage they suffered. Therefore we need not reach the substantive merits of the property valuation question.

Second, Velsicol argues that plaintiffs have admitted that Swat's negligence caused the alleged incursion of chlordane into their home. Throughout this case, plaintiffs have pursued two theories of recovery. First, they contend that Swat negligently applied Gold Crest C–100 to their home and second they allege that Gold Crest C–100 is a defective product giving rise to strict liability in tort. Plaintiffs have consistently argued that Swat misapplied the termiticide because it failed to plug the drill holes in the basement walls into which the termiticide solution was injected and because it applied the solution to an extremely wet basement. Plaintiffs concede that the application was not in accordance with Gold Crest C–100's federally approved label. Plaintiffs' strict liability argument is premised on the assertion that Gold Crest C–100 when applied under ideal conditions, and according to label directions, would permeate the applied residence. Plaintiffs offer the testimony of Dr. Robert K. Simon, an analytical chemist, and Kevin Lee, General Counsel to United States Environmental Protection Agency, in support of their theory that chlordane contaminates even a properly treated home.

The October 13 Opinion and Order held that plaintiffs could not show that Gold Crest C–100 was a defective product under the consumer expectation test. The court further held that plaintiffs' proffered evidence was actionable under the consumer expectation test but that defendant was entitled to summary judgment on this theory because plaintiffs were unable to show that chlordane caused their diseases and symptoms. Nevertheless, plaintiffs argue that "Velsicol's actions in developing and marketing the toxic chemical chlordane are the proximate cause of the Condes' property damage." Plaintiff's Memorandum Contra at 9. The Condes assert claims against "Velsicol for its actions in placing a dangerous chemical on the market." *Id.* at 10.

Plaintiffs maintain that foreseeable intervening causes, such as misapplication, do not absolve the wrongdoer from liability, citing *Mouse v. Central Savings and Trust,* 120 Ohio St. 599, 167 N.E. 868 (1929). Assuming that misapplication of chlordane is foreseeable, plaintiffs can recover against Velsicol only if they can also show that the acts of Velsicol were the proximate cause of their property damage. *R.H. Macy v. Otis Elevator Co.,* 51 Ohio St.3d 108, 554 N.E.2d 1313 (1990). The evidence in this case suggests that Gold Crest C–100, even if it permeates a treated residence as Dr. Simon and Mr. Lee have testified, has not been shown to pose a threat to the health of the residents. See 804 F.Supp. at 1026–27.

Additionally, plaintiffs have offered no evidence suggesting that homes treated against termites in accordance with the instructions on Velsicol's labels with a chlordane based termiticide suffer compensable property damage. Here, Swat not only used Gold Crest C–100 in a manner contrary to the EPA-accepted label but also in violation of federal criminal law. The law requires professional pest control operators to follow label directions. The plaintiffs have conceded the label at issue here was adequate. "The manufacturer is not an insurer that his product is, from a design standpoint, incapable of producing harm." *Gossett v. Chrysler Corp.,* 359 F.2d 84, 87 (6th Cir.1966).

The plaintiffs claim their home is inhabitable because of the presence of chlordane. However, the fact that they have failed to present evidence which demonstrates that chlordane caused their diseases and symptoms or that a properly treated home suffers a diminution is fatal to the Condes' property damage claim. These factors lead inescapably to the conclusion that it is the misapplication, and not the product itself, which is the cause of any property damage the plaintiffs may have suffered. Thus, the Court must conclude that plaintiffs have failed to present

sufficient evidence which, if credited by the finder of fact, would demonstrate that chlordane, when properly applied, causes adverse health consequences or a diminution in the value of the treated home. In the absence of such evidence, a reasonable fact finder could not find Velsicol liable for the plaintiffs' property damage when the sole cause of the property damage, if any, is the negligent application of a product which the plaintiffs cannot prove is defective.

Moreover, this result is compelled by the fundamental rule that plaintiffs must establish causation-in-fact in a strict liability case. *R.H. Macy & Co.*, 51 Ohio St.3d 108, 554 N.E.2d 1313 (1990). In *Bowling v. Heil Co.*, 31 Ohio St.3d 277, 279, 511 N.E.2d 373 (1987) the Ohio Supreme Court stated:

> The liability issues are simple: was the product or its design faulty, did the defendant inject the defective product into the stream of commerce, and did the defect cause the injury?

Here, plaintiffs have failed to show that the product or its design was faulty or that any product defect caused their injury. Rather the record in this case indicates that Swat's negligent application of the termiticide to a water saturated basement and without sealing the holes into which Gold Crest C–100 was injected caused chlordane to migrate into plaintiffs' residence.

Therefore, based on the preceding discussion, defendant's Motion for Summary Judgment on Set–Off and Third Party Causation is GRANTED.

### B. Fear and Emotional Distress

■ Velsicol argues that plaintiffs' alleged fears and distress are not compensable because they are not "severe and debilitating," not caused by their alleged exposure to chlordane, and not objectively reasonable. Greatly summarized, defendant argues that plaintiffs are unable to show that their alleged fears and emotional distress concerning chlordane are "severe and debilitating" as required by Ohio law. *Igo v. Coachmen Industries, Inc.*, 938 F.2d 650, 656 (6th Cir. 1991) (interpreting Ohio Law and quoting *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759 (1983)). Notwithstanding their fears about chlordane, defendant argues, plaintiffs have been able to lead normal lives. Dr. Conde, until very recently, operated a successful medical practice earning a six-figure income. Mrs. Conde performed normal bookkeeping duties for her husband and maintains a home for her family. The three Conde children all lead healthy lives, filled with academic, athletic, and social accomplishments. Accordingly, Velsicol argues that plaintiffs have not suffered "severe emotional distress" for purposes of Ohio law and therefore cannot recover. *Gagne v. Northwestern National Insurance Co.*, 881 F.2d 309, 317 (6th Cir.1989).

Velsicol also argues that plaintiffs' alleged fears and distress concerning chlordane are objectively unreasonable. Their fears are based on the opinions of expert witnesses whose theories are not generally accepted by the relevant scientific and medical communities. See e.g. October 13, Opinion and Order, 804 F.Supp. at 1025–26 (discussing lack of epidemiological studies regarding adverse health effects of chlordane). Moreover, Velsicol argues, the fears are contrary to the opinions offered by most of the physicians with whom plaintiffs have consulted.

Plaintiffs, on the other hand, assert that the cases cited by Velsicol are inapposite here because they are bystander cases in which the plaintiffs received no physical injuries. Plaintiffs' argument rings hollow in light of the Court's prior holding that the Condes cannot prove that any injuries suffered by them are traceable to chlordane exposure. Without the causal connection and proof of physical injuries, plaintiffs are in the same situation as the plaintiffs in *Igo* who sued the manufacturer of their travel trailer when the steering wheel came off in the husband's hands while driving at highway speed but were unable to recover on their fear claims because they sustained no physical injuries. 938 F.2d at 652. Moreover, in light of the Court's conclusion above (and in the October 13 Opinion and Order) that Swat was solely responsible for whatever injuries may have occurred as the result of the misapplication, recovery against Velsicol for fear and emotional distress is not supported by the facts of this case.

Accordingly, Velsicol's motion for summary judgment is GRANTED.

### C. Punitive Damages

 In support of their claim for punitive damages plaintiffs argue that Velsicol knew prior to the release of the 1983 EPA document that chlordane migrates into the interior of properly treated homes. The argument may, in fact, be true. However, plaintiffs have failed to show that chlordane caused their injuries or even that chlordane is capable of causing injuries of the type plaintiffs allegedly sustained.

Under Ohio law, "misconduct greater than negligence is required for an award of punitive damages. This component is expressed in the language 'great probability of causing substantial harm.'" *Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470, 575 N.E.2d 416 (1991). As set out in exhaustive detail in the Court's October 13 Opinion and Order, there is simply insufficient data to conclude that chlordane, and Velsicol's Gold Crest C–100 containing chlordane, has a "great probability of causing substantial harm" as required by the Ohio cases. Absent such a showing, an award of punitive damages against Velsicol is improper. Accordingly, Velsicol's motion for summary judgment on punitive damage claims is GRANTED.

### IV. *Conclusion*

Velsicol's Motion for Summary Judgment on Set–Off and Third Party Causation is GRANTED. The Court also GRANTS Velsicol's Motions for Summary Judgment on Fear and Emotional Distress and Punitive Damages Claims. Insofar as this Opinion and Order disposes of all substantive claims, all other pending evidentiary motions are dismissed as MOOT. The Clerk of Court is DIRECTED to enter JUDGMENT for defendant Velsicol Chemical Corporation on all claims. This action is hereby DISMISSED.

IT IS SO ORDERED.