OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Verbanic, Appellee, v. Verbanic, Appellant.
[Cite as Verbanic v. Verbanic (1994),     Ohio St.3d    .]
Divorce and alimony -- Trial practice -- Conduct of counsel --
     Trial judge's failure to control counsel in divorce
     proceedings results in miscarriage of justice, when.
     (No. 92-2563 -- Submitted March 22, 1994 -- Decided August
3, 1994.)
     Appeal from the Court of Appeals for Trumbull County, No.
91-T-4521.
     Appellant, Annette E. Verbanic, a homemaker, and appellee,
Charles R. Verbanic, a licensed dentist, were married on
November 6, 1982.  No children were born of this marriage.
Appellee filed for divorce on June 20, 1989.
     During the pendency of the divorce action, appellant
retained and discharged four attorneys before retaining
Lawrence V. Cregan in June 1990 for the divorce trial which
began in August 1990.
     After judgment was entered and a division of property
made, appellant retained new counsel and filed a motion for a
new trial.  This motion was grounded upon the conduct of her
trial counsel, Cregan, which appellant claimed deprived her of
a fair trial.  The court disagreed, and denied her motion.
This judgment was affirmed by the court of appeals.
     The cause is now before this court pursuant to the
allowance of a motion to certify the record.

     Donald W. Hill and Charles A. Ziegler, for appellee.
     Stuart J. Banks and James A. Denney, for appellant.

     Francis E. Sweeney, Sr., J.   We are asked to review the
conduct of appellant's trial counsel, Cregan, and determine
whether the trial judge's failure to control him provides
grounds for reversal.  After examining the record, we find that
the trial judge's failure to control Cregan in the divorce
proceedings resulted in a miscarriage of justice.  Accordingly,
we reverse the judgment of the appellate court (83 Ohio App.3d
327, 614 N.E.2d 1103) and remand the cause to the trial court
for a new trial.

Appellant's trial spanned twelve days and produced twelve volumes of transcript. The record is inundated with examples of how a case should not be tried.

At the outset, the judge was put on notice that this would not be a typical trial. Before witnesses were called, Cregan was permitted to argue several frivolous motions. One such motion was for the court to "put on the record if [the judge's] unfortunate first stroke * * * incapacitated him plus some medical proof that he has fully recovered and has the mental and physical ability to hear this case." After the judge informed Cregan that he felt fine and gave his doctor's name, Cregan promised the judge that he would hear from the doctor. Cregan never followed up on his promise.

More egregious, however, were Cregan's remarks to the court that the judge was a sick man, that he did some checking on the judge's medical records and the judge was not "going to see Christmas," and that the judge was "going to die by fall." In addition to calling the judge a sick man, Cregan also called him an alcoholic, and, in fact, referred to him in this manner several times during the trial.

Over the course of the trial, the judge allowed constant, abusive, reprehensible behavior by Cregan toward the witnesses, opposing counsel, the bailiff, and the court itself. For instance, Cregan made several derogatory comments to appellee, including statements alleging that he was a "queer" and suggesting he had AIDS, and was held in contempt of court for his improper questions. Additionally, Cregan was again held in contempt for shoving another attorney during the trial.

The judge permitted repetitive, irrelevant comments and questions from Cregan, many times over strenuous objection from opposing counsel. In fact, opposing counsel pleaded several times with the judge to maintain control of the situation, calling the proceeding a fiasco and imploring the court to impose sanctions. At another point, opposing counsel stated on the record that Cregan's questioning of appellee was "abhorrent * * * contrary to every standard of the judicial system" and he "had never seen anything like it."

Approximately forty pages of the transcript contained Cregan's closing argument. Few lines from these pages related remotely to the issues in the case. The bulk of the argument consisted of continuous, disjointed rambling on unrelated subjects, such as the discussion of an unconnected case, the Mafia, Clarence Darrow, Notre Dame, the IRS, the CIA, and Charley Crab.

Despite all this, we find most disturbing Cregan's failure to provide any meaningful evidence to refute appellee's valuations of the marital assets, liabilities and his dental practice.

Appellant's accountant, William Bletso, testified that appellee undervalued his dental practice. However, Bletso did not assign any value to the practice. Moreover, appellee's expert testified that appellee had an estimated future tax liability of $295,000. Bletso testified that this was an inflated figure. Again, Bletso did not assign a value to this liability. Additionally, Bletso neglected to stress to the court that this tax liability would only be realized if all the assets were liquidated.

Bletso was recalled to the stand as a rebuttal witness regarding the fair market value of the marital home. However, when he was finally questioned about this asset, Bletso did not give an opinion as to its value and stated he had never viewed the home.

When Cregan's request to testify as an appraiser was rejected by the court, Cregan presented the testimony of John McCloskey, who viewed the marital home three hours before he testified. Obviously McCloskey could not make market comparables on such short notice. Moreover, McCloskey's testimony did nothing to controvert appellee's evidence regarding the valuation of the personal effects in the home. In fact, he was asked questions such as "Was it nice furniture?"--to which he responded, "yes."

Moreover, it is evident that the judge was aware of Cregan's failure to present any meaningful evidence for the court's consideration. This is clearly shown in the judge's written findings of fact which state that appellant failed to meaningfully impeach the appellee's evidence or offer rebuttal evidence as to various assets.

To recount each and every instance of misconduct and incompetence would serve no useful purpose. From an objective reading of the record, it is obvious that Cregan was unstable and clearly was not representing his client properly. The judge was duty bound to take control of the proceedings to maintain proper standards of performance and representation. See Canons 3(A)(1) and (B)(1) of the Code of Judicial Conduct. Although the judge did admonish Cregan many times and order him to continue with relevant evidence, this intervention was wholly inadequate, as these admonishments had no effect on Cregan's conduct.

Nor do we accept appellee's proposition that appellant chose Cregan as her attorney and accordingly must be bound by Cregan's actions. While this may be true in the vast majority of cases, the unique facts in this case dictate a different outcome.

In Jones v. Macedonia-Northfield Banking Co. (1937), 132 Ohio St. 341, 8 O.O. 108, 7 N.E.2d 544, this court granted a new trial to the plaintiff because of defense counsel's outrageous conduct. In doing so, this court stated:

"The judge who presides over a cause is not a mere umpire; he may not sit by and allow the grossest injustice to be perpetrated without interference. It is his duty in the executive control of the trial to see that counsel do not create an atmosphere which is surcharged with passion or prejudice and in which the fair and impartial administration of justice can not be accomplished." Id. at 351, 8 O.O. at 112-113, 7 N.E.2d at 549.

While the misconduct in Jones was occasioned by the actions of the opposing party's counsel, we find such reasoning equally applicable here. The judge owes a duty to both sides to control the proceedings in a dignified and legal manner.

In 1992, we suspended Cregan from the practice of law for one year for misconduct occurring during the time of trial of this matter. Although it was alleged that Cregan suffered from bipolar affective disorder (manic-depressive illness), the disciplinary action was not handled as a mental illness

suspension. See Mahoning Cty. Bar Assn. v. Cregan (1992), 62 Ohio St.3d 444, 584 N.E.2d 656. After our ruling, the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") ordered that Cregan submit to a psychiatric evaluation.

Recently, in Mahoning Cty. Bar Assn. v. Cregan (1994), Ohio St.3d , N.E.2d , Cregan was again before this court for a disciplinary matter. We permanently disbarred him for his conduct which, in part, formed the basis of this trial. We found violations of DR 1-102(A)(6) (conduct which adversely reflects on his fitness to practice law); 7-106(C)(6) (conduct during the course of trial which was undignified, discourteous and degrading to the tribunal); 6-101(A)(3) (neglect of a legal matter entrusted); 6-101(A)(2) (handling a legal matter without preparation adequate to the circumstances); and 1-102(A)(5) (conduct prejudicial to the administration of justice). Because Cregan failed to submit to a psychiatric examination, the board was unable to conclude by clear and convincing evidence that Cregan was "mentally ill" within the definition of R.C. 5122.01(A). However, such a finding is immaterial to our issue at hand. Again, we must only determine whether appellant received a fair trial in view of Cregan's conduct.

Upon review of the record, we do not find appellant received a fair trial. We cannot believe that the judge was not prejudiced by Cregan's antics. In fact, the judge accepted appellee's valuations for the marital assets carte blanche, and apparently failed to consider what little evidence was presented by Cregan to rebut the valuations for the marital liabilities.

As Justice Douglas remarked in his dissenting opinion in Volodkevich v. Volodkevich (1988), 35 Ohio St.3d 152, 156, 518 N.E.2d 1208, 1212: "Our system of justice cannot survive without retaining the faith of the public in the essential fairness of the judicial process."

Due process requires fairness and a fair trial. This chaotic, unruly proceeding conducted outside the Rules of Evidence, the Code of Judicial Conduct and the Code of Professional Responsibility fell far short of ensuring that fairness and justice prevailed. A judge sitting as trier of fact and law cannot sit idly by during the course of the trial, knowing full well an attorney's actions were compromising the interests of his client, and do nothing to prevent the same. The conduct of Cregan certainly reached the level which demanded the termination of the proceedings and a new trial. Finding an error on the part of the trial judge, we reverse the appellate court's decision and remand the cause to the trial court for a new trial.

Judgment reversed
and cause remanded.

Moyer, C.J., A.W. Sweeney, Douglas, Resnick and Pfeifer, JJ., concur.

Wright, J., dissents.

Wright, J., dissenting. I dissent not because I think Lawrence Cregan's conduct during trial was acceptable -- it clearly was not -- but because appellant had repeated

opportunities to dismiss Cregan during trial and declined to do so, despite the efforts of the trial judge. At trial the judge specifically asked appellant if she wanted new counsel, and, for unexplained reasons, she elected to keep Cregan.

I agree with the analysis of the court of appeals on the issue whether appellant is entitled to a new trial. On this issue, the court said:

"[W]e are mindful of the distinction between the conduct of appellant's trial counsel and the conduct of the trial court. Unquestionably, the conduct of appellant's trial counsel was, at times, outrageous. The trial judge, however, conducted both himself and the trial in a proper manner. The court endeavored to complete the trial in a fair and expeditious manner, despite the antics of appellant's trial counsel, and appellant has failed to demonstrate where, on the record, the trial judge deviated from the standard of conduct which is imposed upon this state's judiciary. See Code of Judicial Conduct.

"Appellant, instead, cites two cases in support of her request that the trial court's judgment be reversed.

"In Igo v. Coachman [sic Coachmen] Industries, Inc. (C.A. 6, 1991), 938 F.2d 650, the United States Court of Appeals held, inter alia, that the conduct of plaintiff's trial counsel was so egregious as to warrant reversal of a judgment entered upon a jury's verdict. We refuse to apply Igo to the instant case, which was tried to the court sitting without a jury. The Igo court expressly relied upon the jury's presence when it decided the case:

"'A trial court cannot sit quietly while counsel inflames the passions of the jury with improper conduct, even if opposing counsel does not object. The trial court should have censured and stopped this conduct.' Id. at 654.

"If a jury were present in the instant case, the antics of appellant's trial counsel might have warranted a new trial. The absence of a jury, however, leads us to the conclusion that the trial was not error-filled in the sense that the Igo trial was.

"Appellant also cites State v. Brown (Mar. 26, 1990), Mahoning App. No. 87 C.A. 145, unreported, 1990 WL 34744. Appellant argues that, unlike Igo, Brown involved a bench trial and the court of appeals reversed Brown's convictions for assault and resisting arrest on the basis of the outrageous conduct of Brown's trial counsel (who was appellant's trial counsel herein). The important distinction between Brown and the instant action is that a criminal defendant has a constitutional right to the assistance of counsel. Prosecutions in which defendants are denied the effective assistance of counsel are unlawful. Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Hester (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304. Such rule is not applicable to civil cases. If appellant's trial counsel was guilty of malpractice which harmed appellant, appellant's remedy is against her trial counsel; her remedy is not a new trial against appellee." (Emphasis added.) Verbanic v. Verbanic (1992), 83 Ohio App.3d 327, 329, 614 N.E.2d 1103, 1104-1105.

For the foregoing reasons, I would affirm the court of

appeals.  Accordingly, I respectfully dissent.