142 F.3d 353
 Prod.Liab.Rep. (CCH) P 15,231
Joann STRICKLAND, Executrix of the Estate of John Hagan,
Plaintiff-Appellee,
Travelers Insurance Company, Intervening Plaintiff-Appellee,
v.
OWENS CORNING, formerly known as Owens Corning Fiberglas
Corporation, Defendant-Appellant,
W.R. Grace and Company, et al., Defendants.
 No. 96-6169.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 29, 1998.
Decided April 23, 1998.
Rehearing Denied June 18, 1998.
 
 Kenneth L. Sales (argued and briefed), Segal, Isenburg, Sales, Stewart, Cutler & Tillman, Louisville, KY, Marc P. Weingarten, Greitzer & Locks, Philadelphia, PA, for Plaintiff-Appellee.
 Judson Fuller Devlin, Fulton & Devlin, Louisville, KY, for Intervenor-Appellee.
 Donald K. Brown, Jr. (argued and briefed), John L. Dotson (briefed), Eric A. Paine (briefed), O'Bryan, Brown & Toner, Louisville, KY, for Defendant-Appellant.
 Before: NELSON, SUHRHEINRICH, and GILMAN, Circuit Judges.
 OPINION
 SUHRHEINRICH, Circuit Judge.
 
 
 1
 This appeal arises from a products liability and wrongful death action against Appellant Owens Corning, a former manufacturer and distributor of Kaylo, an asbestos-containing insulation product. The action was brought in federal district court by the estate of John Hagan, who died of an asbestos-related form of lung cancer. At trial, a jury found Kaylo to be a defective product, determined Hagan's damages to be $1,767,462, and allocated seventy percent of the fault for his illness to Defendant Owens Corning. As a result, a judgment of $1,237,223, or seventy percent of the total damage award, was entered against Defendant. Owens Corning moved for a new trial, or alternatively, a remittitur of the judgment, and the district court denied the motion.
 
 
 2
 Owens Corning now appeals the denial of the motion, arguing that the jury's apportionment of fault is clearly against the weight of the evidence, given that Defendant was merely the distributor of Kaylo during the period for which the jury found Defendant liable. Owens Corning contends that the product's manufacturer during that period shares at least an equal percentage of fault. Defendant also maintains, on appeal, that the jury's verdict was the result of improper remarks made by Plaintiff's counsel during his closing argument. We find that the jury's allocation of fault was, indeed, against the weight of the evidence. Therefore, we REMAND this case for a new trial limited to the issue of fault apportionment, unless Plaintiff accepts a remittitur of the judgment reflecting a reasonable apportionment of fault.
 
 I. Facts
 
 3
 From 1948 through 1989, John Hagan was employed as an installer of insulation materials. As a result, he was exposed to asbestos-containing insulation products. In 1989, Hagan was diagnosed with mesothelioma, a rare form of lung cancer, which caused his death six months later. There is no dispute that Hagan's illness was caused by occupational exposure to asbestos.
 
 
 4
 In 1953, Defendant Owens Corning became one of the distributors of Kaylo, an asbestos-containing heat insulation product which was manufactured by Owens-Illinois Glass Corporation. In 1958, Defendant became the manufacturer of the product when it bought the Kaylo product line from Owens-Illinois, and Defendant continued to manufacture the product into the 1970's. Although there were multiple distributors of Kaylo from 1953 to 1958, the period for which the jury found Defendant liable, testimony at trial established that Hagan was exposed, in part, to Kaylo distributed by Defendant during that period. However, there was no evidence that Kaylo distributed by Defendant, or even Kaylo in general, accounted for most of Hagan's exposure to asbestos during that period or any period.
 
 
 5
 It is clear that Owens Corning was aware by at least 1942 of numerous published reports linking asbestos with lung disease. Given the public nature of this information, Owens-Illinois was assumedly also aware of the health risks posed by asbestos. A separate issue is whether either company was aware of specific risks posed by Kaylo, which contained fifteen percent asbestos. Owens-Illinois had knowledge of some such risks prior to the 1953-58 period in question, because it had commissioned Saranac Lake Laboratories to test Kaylo. The Laboratories issued a final report on their testing in 1952, but Defendant did not receive a copy of that report until 1958, when it purchased the Kaylo product line from Owens-Illinois. As the district court instructed the jury, "prior to [1958], ... there's no evidence that anyone at Owens-Illinois advised anyone at Owens Corning about this ongoing research." Nonetheless, despite its awareness of the general risks posed by asbestos, Defendant did not put any warning on the boxes of Kaylo which it distributed between 1953 and 1958, even though it added its name to those boxes. Similarly, Owens-Illinois neither put a warning on the boxes, nor otherwise informed Kaylo users of the risks.
 
 II. District Court Proceedings
 
 6
 In 1989, John Hagan filed a products liability diversity action in United States District Court for the Western District of Kentucky, naming nineteen defendants involved in the manufacture and distribution of asbestos-containing products. Shortly thereafter, Hagan died. JoAnn Strickland, Hagan's daughter and the executrix of his estate, amended the complaint to revive his action and bring a wrongful death action on behalf of his estate. Eventually, eighteen of the nineteen defendants either settled with Plaintiff or were dismissed from the suit. Owens-Illinois was among those defendants who settled.
 
 
 7
 A jury trial was held in 1996, and the jury found Defendant liable as a distributor of Kaylo for the period from 1953 to 1958. However, the jury found Defendant not liable for the period, beginning in 1958, during which it manufactured Kaylo. The jury determined that seventy percent of Hagan's illness was attributable to Defendant, while the remaining thirty percent "was attributable to Hagan's exposure to asbestos-containing product [sic] manufactured by those other than the Defendant." (Jury Instructions). The jury computed total compensatory damages of $1,767,462, consisting mostly of $1,500,000 for Hagan's pain and suffering during the last six months of his life. Punitive damages were not available.[1] A judgment of $1,237,223, or seventy percent of the total damage award, was entered against Defendant.
 
 
 8
 Defendant filed a timely motion seeking a new trial, or alternatively, "a remittitur of the award by reduction of the amount of compensatory damages and/or remittitur of the percentage of fault assessed against Owens Corning." The district court rejected the motion, and in a brief memorandum and order, stated that "the apportionment to Defendant, though unexpectedly high, is supported by sufficient evidence for it to withstand these post-trial motions."
 
 III. Apportionment of Fault
 
 9
 Defendant contends that it was clearly unreasonable to allocate seventy percent of the fault for Hagan's illness to Owens Corning, given that Defendant was merely a distributor of Kaylo during the 1953-58 period for which the jury found Defendant liable. The crux of Defendant's argument is that, since every box of Kaylo it distributed during that period was manufactured by Owens-Illinois, Defendant's fault can be no greater than that of Owens-Illinois. Yet the jury fixed Defendant's fault at more than twice the combined fault of all other companies selling asbestos-containing products, including Owens-Illinois.
 
 
 10
 The allocation of fault is governed by Kentucky law in this diversity case. Under Kentucky law, when "determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed." Ky.Rev.Stat. § 411.182(2) (emphasis added). However, Plaintiff points to no evidence which distinguishes Defendant's conduct in such a way as to support a greater allocation of fault to Defendant than to Owens-Illinois.[2] Indeed, during oral argument before this court, Plaintiff's counsel was asked at least five times to provide a basis for distinguishing Defendant's conduct as more blameworthy, yet he could not suggest any basis for making such a distinction.
 
 
 11
 Instead, Plaintiff defends the jury's allocation of fault by repeatedly pointing to Defendant's awareness of and failure to warn about the dangers of asbestos. As Plaintiff correctly asserts, Defendant was aware of the health risks posed by asbestos long before the 1953-58 period in question. However, that awareness was based on public information. Plaintiff can point to no evidence that Defendant had any additional private knowledge about the dangers of asbestos. Moreover, the question before the jury was whether Kaylo was a defective product, rather than whether asbestos in general was hazardous, and any knowledge about the specific risks posed by Kaylo was held by Owens-Illinois. Owens-Illinois commissioned Saranac Lake Laboratories to test Kaylo and did not share the results with Defendant until 1958, despite the fact that the Laboratories issued a final report in 1952.
 
 
 12
 Owens-Illinois is also legally charged with having at least as much knowledge about the risks posed by Kaylo as did Defendant. Under the strict liability standard applicable to this products liability case, a manufacturer is presumed to be "aware of the condition of and potentialities inhering in the product." Ulrich v. Kasco Abrasives Co., 532 S.W.2d 197, 200 (Ky.1976); accord Nichols v. Union Underwear Co., 602 S.W.2d 429, 433 (Ky.1980) (presuming manufacturer is "fully aware of the risk"). In fact, the jury was explicitly instructed to make that presumption with regard to a manufacturer. In contrast, the jury was instructed that "when Defendant was only a distributor or retailer of [Kaylo], Defendant is liable ... [only if] Defendant knew or should have known ... that the product was in a defective condition." However, even if Defendant were held to the same standard as the manufacturer, Defendant cannot legally be found to know more than Owens-Illinois about the risks posed by Kaylo, because Owens-Illinois is presumed to be fully aware of those risks.
 
 
 13
 As Plaintiff correctly points out, Defendant failed to warn Kaylo users about even the risks of which it was aware. However, Owens-Illinois also failed to attach any warnings to its product, despite having as much knowledge as Defendant about the dangers of asbestos in general and more knowledge about the risks posed by Kaylo in particular. While Defendant's failure to warn about what it knew is highly relevant to the general question of Owens Corning's liability, it does nothing to distinguish Defendant's conduct as being more culpable than that of Owens-Illinois for the period in question. Thus, Plaintiff fails to explain how the jury could have reasonably allocated a greater percentage of fault to Owens Corning than to all other companies selling asbestos-containing products combined, including Owens-Illinois. In sum, the jury's apportionment of seventy percent fault to Defendant cannot be supported factually, legally, or logically. We reach that conclusion, moreover, without even taking into account the absence of evidence that Kaylo distributed by Defendant, or even Kaylo in general, played the primary role in causing John Hagan's illness.
 
 
 14
 We turn now to Owens Corning's contention that, in light of the lack of evidentiary support for the jury's allocation of fault, the district court should have granted Defendant's motion for a new trial, or alternatively, a remittitur of the judgment. We have held that "a new trial is warranted when a jury has reached a seriously erroneous result as evidenced by ... the verdict being against the weight of the evidence." Holmes v. City of Massillon, 78 F.3d 1041, 1045-46 (6th Cir.) (internal quotation marks omitted), cert. denied, 519 U.S. 935, 117 S.Ct. 312, 136 L.Ed.2d 228 (1996). Specifically, we have stated:
 
 
 15
 [I]n ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, the trial court must compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence. It should deny the motion if the verdict is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable.
 
 
 16
 J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co., 936 F.2d 1474, 1487 (6th Cir.1991) (citation omitted). The standard for a remittitur is similar: "a motion for new trial seeking a remittitur of a jury's verdict ... should be granted only if the award clearly exceeds the amount which, under the evidence in the case, was the maximum that a jury could reasonably find." Roush v. KFC Nat'l Management Co., 10 F.3d 392, 397 (6th Cir.1993) (citation and internal quotation marks omitted).
 
 
 17
 "[T]he task of the district court in ruling upon motions for a new trial challenging the weight of the evidence ... differs from [the stricter standard] utilized for motions challenging the sufficiency of the evidence." J.C. Wyckoff, 936 F.2d at 1487. Because the district court spoke of the jury's allocation of fault as being "supported by sufficient evidence" in its order denying the motion for a new trial or a remittitur, it is possible that the court incorrectly applied the stricter standard. However, even under a sufficiency of evidence standard, the court should have granted Defendant's motion, for there is simply no evidence to support an allocation of fault to Defendant which exceeds that attributed to all other companies selling asbestos-containing products combined, including Owens-Illinois. Nonetheless, we may overturn the district court's denial of a new trial only upon finding an abuse of discretion, Porter v. Lima Memorial Hosp., 995 F.2d 629, 635 (6th Cir.1993), and the same standard is applied to the court's rejection of a remittitur. Roush, 10 F.3d at 397. Although "appellate courts traditionally have been reluctant to overturn a trial court's order granting or denying a motion for a new trial that is based on the ground that the verdict was against the weight of the evidence," J.C. Wyckoff, 936 F.2d at 1487, we find that, even under the most deferential standard, the district court abused its discretion in denying Defendant's motion for a new trial or a remittitur.
 
 IV. Plaintiff's Closing Argument
 
 18
 Defendant contends that Plaintiff's counsel made improper remarks to the jury during his closing argument. Specifically, Defendant alleges that counsel (1) implicitly urged the jury to send a message to Defendant by awarding punitive damages, though none were available, and (2) appealed to class prejudice and bias against corporations. The following excerpts from Plaintiff's closing argument are illustrative of what Defendant objects to:
 
 
 19
 You can tell a manufacturer, your product is unsafe, and your voice will be heard.... You come in here as the voice of the community.... Do you want to live in a world where Owens Corning makes the rules.... You have an opportunity ... to tell Owens Corning, to tell the world where you stand, whether you stand for safe products and decency.
 
 
 20
 Defendant argues that these allegedly improper statements constitute alternative grounds for a new trial.
 
 
 21
 If Defendant's contention is correct and counsel's closing argument was improper, and if "there is a reasonable probability that the verdict of [the] jury has been influenced by such conduct, it should be set aside." Cleveland v. Peter Kiewit Sons' Co., 624 F.2d 749, 756 (6th Cir.1980) (internal quotation marks omitted); accord Holmes, 78 F.3d at 1045-46 ("[A] new trial is warranted when a jury has reached a seriously erroneous result as evidenced by ... the proceedings being influenced by prejudice or bias.") (internal quotation marks omitted). However, as a threshold issue, Plaintiff argues that Defendant waived its right to appeal based on the allegedly improper remarks, because it failed to object to them at trial or ask for a curative jury instruction.[3] Plaintiff misstates the law when she cites Kokesh v. American Steamship Co., 747 F.2d 1092 (6th Cir.1984), for the proposition that an objection to closing arguments is waived on appeal if not timely made. In fact, what we said in Kokesh was that the statements made during closing argument "were not so egregious as to require a new trial when defense counsel did not make a contemporaneous objection." Id. at 1095. However, we have also found that "the conduct of Plaintiffs' counsel was so outrageous as to warrant reversal of the verdict and [a] new trial," despite opposing counsel's failure to object. Igo v. Coachmen Indus., Inc., 938 F.2d 650, 659 (6th Cir.1991) (reversing the verdict on other grounds). Nonetheless, failure to object at trial to closing arguments does raise the degree of prejudice which must be demonstrated in order to get a new trial on appeal. See Reese v. Mercury Marine Div. of Brunswick Corp., 793 F.2d 1416, 1429 (5th Cir.1986).
 
 
 22
 Turning to the substance of Defendant's contention, we note that Plaintiff's counsel did not directly ask the jury to award punitive damages, nor did he ask the jury to base its award on non-compensatory factors such as Defendant's net worth or income. Moreover, the jury's total damage award of $1,767,462, consisting primarily of $1,500,000 for Hagan's pain and suffering, is not so large as to indicate that the jury intended to punish Defendant. Compare Evers v. Equifax, Inc., 650 F.2d 793, 797 (5th Cir.1981) (upholding grant of new trial where request for punitive damages during "closing argument together with the amount of the award, is sufficient evidence to justify the district court's conclusion that the jury awarded punitive damages as well as actual damages"). In fact, in its list of issues for appellate review, Defendant asks whether improper closing arguments produced an unreasonable apportionment of fault, but does not question the size of the total damage award. It is possible that the allocation of seventy percent fault to Defendant is indicative of the jury having punitive intentions, but there are independent grounds for concluding that the allocation is erroneous, so we need not reach this sub-issue.
 
 
 23
 In addition to alleging an improper request for punitive damages, Defendant contends that Plaintiff's closing argument constituted an improper "appeal to class prejudice and pandering to the perception that corporations wield disparate power." It is true that an "us-against-them plea can have no appeal other than to prejudice by pitting 'the community' against a nonresident corporation [and] is an improper distraction from the jury's sworn duty to reach a fair, honest and just verdict." Westbrook v. General Tire & Rubber Co., 754 F.2d 1233, 1238 (5th Cir.1985); see also Pingatore v. Montgomery Ward & Co., 419 F.2d 1138, 1142 (6th Cir.1969) (references to defendant "as a corporation and a large organization" were one of several types of improper closing remarks that required a new trial). Although there was an "us-against-the-powerful-corporation" flavor to Plaintiff's closing remarks, as quoted above, we believe those remarks were not so prejudicial as to mandate a new trial, especially where no objection was raised at the first trial. Moreover, Defendant does not seriously argue that it should have no liability, and we have said that the $1,767,462 damage award appears reasonable. Thus, any prejudice caused by the closing argument was reflected in the jury's apportionment of fault, which we have already concluded to be erroneous.
 
 V. Further Proceedings
 
 24
 In summary, given the absence of evidentiary support for the allocation of seventy percent fault to Defendant, the district court abused its discretion when it denied Defendant's motion for a new trial or a remittitur. As a result, we must remand the case to the district court. However, the question remains whether to simply order a new trial or, instead, to offer Plaintiff the alternative of accepting a remittitur which reflects a reasonable apportionment of fault. Where "[t]he defects in the award are readily identified and measured," remittitur is more appropriate than a new trial. Kolb v. Goldring, Inc., 694 F.2d 869, 875 (1st Cir.1982) (ordering a new trial on the question of damages unless plaintiff consents to a remittitur); accord Brunnemann v. Terra Int'l, Inc., 975 F.2d 175, 178 (5th Cir.1992). Similarly, remittitur would seem an appropriate remedy where a defect in the allocation of fault can be readily identified. We believe that is the case here, where the defect in the jury's apportionment of fault can be identified as its decision to allocate more fault to Defendant than to all other companies selling asbestos-containing products combined. That defect is readily corrected by a remittitur which reflects an allocation of fault to Defendant of fifty percent or less.
 
 
 25
 On remand, the district court's review of the evidence might suggest an allocation of fault to Defendant of considerably less than fifty percent. For example, Defendant argues that it is less at fault than Owens-Illinois, which commissioned Saranac Lake Laboratories to test Kaylo and did not share the results with Defendant until 1958. Alternatively, Owens Corning and Owens-Illinois might be equally at fault, yet each could share considerably less than fifty percent of the total fault for Hagan's illness, given that other asbestos-containing insulation products likely played a role in the illness. Thus, the district court is free to suggest a remittitur which reflects an allocation of less than fifty percent fault to Defendant, if that is what the evidence supports.
 
 
 26
 We note that one federal circuit has called into question the adjustment of a jury's apportionment of fault by the device of remittitur. See Akermanis v. Sea-Land Service, Inc., 688 F.2d 898, 902-03 (2nd Cir.1982) (holding that plaintiff could not be asked to accept an increase in the contributory negligence percentage, and thus a decrease in the judgment, as the price of avoiding a new trial). However, we believe the view of the Seventh Circuit, as stated by Judge Posner, is the more sensible one:
 
 
 27
 [There is] a technical question whether remittitur is proper in a case of malapportionment of damages, as distinct from excessive damages. Strictly speaking it is not, for ... the decision on apportionment is a decision on liability, and not on the amount of damages. But we think logic ought to give way to practical convenience and to the policy behind the device of remittitur, which is that if the plaintiff is willing to accept a lower amount of damages rather than incur the risks and expense of a new trial, and the defendant cannot complain because that lower amount would have been within the jury's power to award, it is a just economy to terminate the suit without a retrial. The policy is fully applicable to a case such as this where the defendants are complaining that the jury placed too large a share of the blame on them.
 
 
 28
 Davis v. Consolidated Rail Corp., 788 F.2d 1260, 1267 (7th Cir.1986). Moreover, this court has stated that "what is crucial to the practice of granting remittitur is 'the requirement that the court confine its role to the removal of the excess portion of the verdict so that the [adjusted damage award] leaves in the judgment a portion of what the jury awarded.' " Hill v. Marshall, 962 F.2d 1209, 1216 (6th Cir.1992) (quoting Shu-Tao Lin v. McDonnell Douglas Corp., 742 F.2d 45, 49 (2nd Cir.1984)) (additional quotation marks omitted). We believe that requirement is met here.
 
 
 29
 Therefore, we REMAND to the district court with instructions to propose to Plaintiff a remittitur which reflects a reasonable allocation of fault to Defendant, based on the evidence. The remittitur must reduce the judgment against Defendant to no more than $883,731, or fifty percent of the $1,767,462 total damage award. If Plaintiff accepts the remittitur, we direct the district court to enter the reduced judgment. Otherwise, a new trial shall be ordered, and it should be limited to determining the proper allocation of fault. See Davis v. United States, 716 F.2d 418, 430 (7th Cir.1983) ("remand[ing] the case for a new trial limited to the proper apportionment of the parties' fault, unless [plaintiff] files a written election to accept one-third of the damages").
 
 
 
 [1]
 Hagan's complaint included a claim for punitive damages, but that claim was severed
 
 
 [2]
 Plaintiff argues that Ky.Rev.Stat. § 411.182 contains no requirement that the fault allocated to the distributor of a product be the same or less than that allocated to the product's manufacturer. While true, this argument is a necessary but not sufficient condition for finding the jury's apportionment of fault to be reasonable
 
 
 [3]
 Some of the remarks at issue were raised for the first time in Defendant's motion for a new trial, while the others were first raised in Defendant's appellate briefs