NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0224n.06

Case No. 20-5845

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Apr 27, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TERRI PETERSON, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| WEST TN EXPEDITING, INC., | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SILER, THAPAR, and MURPHY, Circuit Judges.

THAPAR, Circuit Judge. When one employee assaults another, the answer isn't to let the victim go. But that's exactly what this Tennessee trucking company did. The company said it was out of options. A jury disagreed and awarded the victim $150,000. The company moved for a new trial, but the district court upheld the jury's verdict. We affirm.

I.

Because this case arises after a jury verdict for Terri Peterson, we describe the facts (many of which were disputed at trial) in the light most favorable to her. Peterson wanted to be a truck driver, but she didn't yet have her commercial driver's license. So she started working as a trainee for a trucking company, West TN Expediting. The plan was for her to accompany one of West TN's employees, James Corbin, on trucking runs until she had the skills to pass the driving test.

The arrangement started badly and ended quickly. On one of their first nights on the road in April, Peterson woke up to Corbin's hand grabbing her breast. She screamed and told him to get away. When they got home, she reported the incident to company management. The second-in-command, Terri Peevyhouse, said she would handle it. But Peevyhouse didn't do any further investigating, and she didn't tell anyone else in management about the assault. Nobody approached Corbin about the accusation.

Peevyhouse continued to put Peterson and Corbin together on the driving schedule. And for the next two months, Peterson put up with Corbin's continued harassment. He would make lewd comments and try to touch her, but Peterson kept it to herself. At first, she thought Peevyhouse was working on a solution. But as time went on, she figured that Peevyhouse wasn't willing to help.

Then, one night in early June, Corbin put his hand between Peterson's legs while she was asleep. She screamed and said she would tell the company's owner, Jeff Buckner, about the assault. Corbin warned that she would lose her job if she told Buckner.

Peterson reported it anyway. This time, Peevyhouse and Buckner decided that they could no longer put Peterson in a truck with Corbin. They were willing to hire Peterson's boyfriend so that he could finish training her, but her boyfriend didn't want to leave his current job.

So that was the end of Peterson's employment with West TN. When Peterson asked about returning to work, Peevyhouse told her not to come back. How come? Peterson couldn't drive on her own without a license; she couldn't ride with Corbin anymore; and her boyfriend didn't want to quit his job to work for West TN. In the end, Corbin was right: Once Peterson reported the assault, she was never again added to the company's work schedule. (Corbin, on the other hand, continued to work for West TN.)

Peterson sued West TN under Title VII of the Civil Rights Act and the Tennessee Human Rights Act. *See Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008) (describing the analysis for claims under these laws as "identical"). She brought two claims under each law— one for sex discrimination (because of Corbin's assaults), and one for retaliation (because she lost her job after reporting the assaults). The case went to trial.

At trial, West TN's officers agreed that Peterson would have been on the company work schedule driving with Corbin had she not reported the June assault. They also acknowledged that the company employs over 150 other truck drivers, and that one of them—Velma Hernandez— had agreed to train Peterson. And they admitted that they never told Peterson she could work with Hernandez after deciding that she could no longer drive with Corbin.

The jury concluded that West TN was not liable for Corbin's harassment, but that it was liable for firing Peterson in retaliation for her complaint. It awarded Peterson $50,000 in lost wages and $100,000 in punitive damages.

West TN moved for a new trial. In its view, the jury's retaliation finding and its award of punitive damages were against the clear weight of the evidence. *See Strickland v. Owens Corning*, 142 F.3d 353, 357 (6th Cir. 1998). The district court disagreed, and so do we.

## II.

West TN did not move for judgment as a matter of law, so the only question before us is whether the district court abused its discretion by denying the motion for a new trial.[1] *See id.* at

---

[1] West TN devoted most of its brief to a forfeited argument—that the evidence is legally insufficient to support the jury's verdict. But the time to make that point is long past. If West TN thought that Peterson had not provided enough evidence to support a retaliation finding or an award of punitive damages, it should have moved for judgment as a matter of law *before* the case was sent to a jury. *See* Fed. R. Civ. P. 50(a)(2). Since it did not, its only option after trial (and on appeal) was to move for a new trial. *See Ortiz v. Jordan*, 562 U.S. 180, 189 (2011). A court may grant

358. It did not. The clear weight of the evidence supports the jury's retaliation finding and its award of punitive damages.

First, the retaliation finding. To prevail on her retaliation claim, Peterson had to show a causal connection between her sexual-harassment complaint and the loss of her job. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (requiring but-for causation in Title VII retaliation claims). West TN says the great weight of the evidence cuts against Peterson on this one element of her claim. But the two people who run the company—Buckner and Peevyhouse—told a jury that Peterson would have remained on the work schedule had she not reported the June assault. Peterson's lawyer had the following exchange with Buckner at trial:

> Q. Candidly, Mr. Buckner, is it fair to say that had Terri Peterson never made the sexual assault report on June 1st, 2017, that she would have been scheduled the following week?
>
> . . .
>
> Q. Is that a yes?
>
> A. That's yes.

R. 55, Pg. ID 469. And he had a similar exchange with Peevyhouse:

> Q. And honestly, is it fair to say that if Terri Peterson had not made that June report . . . that you would have schedule [sic] her for the following week?
>
> A. Yes.

R. 56, Pg. ID 614. That's all the jury needed to find that Peterson had satisfied the causal element of her claim. When the standard is but-for causation, "[i]t doesn't matter if other factors . . . contributed to the decision." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1741 (2020). Because

---

a new trial if the jury's verdict could not "reasonably . . . have been reached" based on the evidence presented at trial—even if the moving party never asked for judgment as a matter of law. *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007) (quoting *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967)); *see Strickland*, 142 F.3d at 357–58.

West TN's officers admitted that they would have continued to give Peterson work but for her complaint, the great weight of the evidence supports a finding of but-for causation.

West TN claims that this broad but-for causation test creates a "dangerous precedent" by imposing liability even when an employer's adverse action had only the most attenuated of connections to the employee's discrimination complaint. Yet it is well-established that "a but-for causation test isn't the most demanding." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1034 (2021) (Gorsuch, J., concurring in the judgment). That is why the common law developed other principles, like proximate causation. *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). But West TN did not argue for anything other than but-for causation. Perhaps these other principles could apply in some circumstances. Suppose, for example, that during an investigation of an employee's discrimination complaint, the employer learns by happenstance that the employee has engaged in egregious criminal misbehavior like embezzlement or fraud. If the employee proves that the employer would not have uncovered these misdeeds "but for" the employee's protected complaint, would the termination of the employee for them violate Title VII? Maybe proximate-causation principles can sometimes cut off liability, as the Supreme Court has suggested under another antidiscrimination statute. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 419–20 (2011). But we need not consider the point further because West TN challenges only but-for causation. And the record readily supports the jury's finding on that element.

On to punitive damages. The jury awarded punitive damages after finding that West TN "acted with malice or with reckless disregard as to [Peterson's] federally protected right[] . . . not to be subjected to . . . retaliation." R. 52, Pg. ID 425. West TN agrees that the "malice or reckless disregard" standard is the right one. *See* Appellant Br. at 46; 42 U.S.C. § 1981a(b)(1). But it says the clear weight of the evidence cuts against the jury's finding because, in its view, "the only

undisputed evidence shows that West TN took steps to protect and help Peterson" after she reported the assault. Appellant Br. at 46. There are two problems with this argument.

In the first place, the undisputed evidence doesn't prove that West TN protected and helped Peterson. If anything, it proves the opposite. The parties agree that after the April assault, West TN continued to schedule Peterson to drive with Corbin week after week. Sending Peterson back out on trucking runs with the man who assaulted her is not protection. And while Peevyhouse claimed that Peterson adamantly indicated that she wanted to continue driving with Corbin and did not want Peevyhouse to investigate the incident, the jury was free to disregard this claim in favor of Peterson's competing testimony that she asked Peevyhouse for help.

The undisputed evidence also reveals how little West TN did to help after the second assault. Buckner admitted that he did not even explore the option of putting Peterson with any West TN driver besides Corbin. And while Peevyhouse says Peterson could have trained with Hernandez instead, even she agrees that she never gave Peterson that option after the June assault. On the other side of the ledger, it is undisputed that Buckner said he could hire Peterson's boyfriend to come train her. But once Peterson told him that her boyfriend didn't want to quit his current job, Buckner gave up trying. West TN did not help Peterson; it let her go. That supports the jury's verdict.

Second, the jury did not have to restrict itself to only undisputed evidence. It was allowed to accept disputed evidence that cut in Peterson's favor. That is especially so here, when West TN's account was riddled with inconsistencies. Here are a few:

- Peevyhouse said at her deposition that she had 10–20 conversations with Buckner about the April sexual-assault report. But Buckner testified that he didn't have even one conversation about a sexual-assault accusation in April.
- West TN wrote in the joint pretrial order that Buckner and Peevyhouse immediately questioned Corbin about the April assault after Peterson reported it. It also said that

West TN offered to immediately fire Corbin. At trial, Buckner, Peevyhouse, and Corbin admitted that none of that was true.

- At one point, Peevyhouse testified that she offered Peterson a plane ticket home after Peterson reported the June assault; later that day, she testified that she didn't.

- Peevyhouse testified that she gave Peterson the option of training with Hernandez after Peterson made the June report. A few minutes later, she said she didn't.

The jury did not have to credit West TN's side of the story. And there was plenty of evidence that West TN did display reckless disregard for Peterson's rights. At trial, Buckner said that Peterson "[o]bviously . . . thought she was okay to continue to ride [with Corbin]" after reporting the assault, or she would have done something else about it. R. 55, Pg. ID 499. And Peevyhouse herself testified that it was a mistake "[t]o allow Ms. Peterson to continue working" after Peterson reported the first assault. *Id.* at 581. When asked why that was a mistake, Peevyhouse responded, "We're obviously here now. That's a mistake." *Id.*

The weight of the evidence supports the jury's verdict. We affirm.