RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0103p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

APPALACHIAN REGIONAL HEALTHCARE, INC.,

*Plaintiff-Appellee*,

*v.*

U.S. NURSING CORPORATION,

*Defendant-Appellant*.

> No. 21-5994

───────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Pikeville.
No. 7:14-cv-00122—Karen K. Caldwell, District Judge.

Decided and Filed:  May 18, 2023

Before:  MOORE, CLAY, and STRANCH, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Byron N. Miller, Joseph A. Wright, THOMPSON, MILLER & SIMPSON, PLC, Louisville, Kentucky, for Appellant.  Barry Hunter, Medrith Lee Norman, FROST BROWN TODD LLC, Lexington, Kentucky, for Appellee.

───────────────

## OPINION

───────────────

CLAY, Circuit Judge.  Plaintiff Appalachian Regional Healthcare, Inc. sued Defendant U.S. Nursing Corporation for indemnity in this diversity of citizenship action pursuant to 28 U.S.C. § 1332(a).  Appalachian sought reimbursement for costs it incurred to a settle a lawsuit initiated by a patient whose injuries were allegedly exacerbated by the nursing staff provided to Appalachian's hospital facility by U.S. Nursing.  Appalachian prevailed at trial, and U.S.

Nursing now appeals the district court's order denying its request for a new trial. For the reasons set forth below, we **AFFIRM**.

## I. BACKGROUND

### A. Factual Background

Appalachian runs Whitesburg ARH Hospital in Whitesburg, Kentucky ("Hospital"). In 2007, Hospital nurses went on strike. In response to that strike, Appalachian entered into an agreement with U.S. Nursing through which U.S. Nursing agreed to provide the Hospital with nursing staff during the strike ("Agreement"). Under the Agreement, U.S. Nursing agreed to indemnify and defend Appalachian for the negligence of any of its employees assigned to the Hospital.

The instant case arose in connection with an underlying state court action. That underlying action stemmed from a horrific injury that Ralph Profitt sustained while working at a sawmill in 2007. After he was hurt, two of Profitt's colleagues, David English and Ken Jaworski, transported Profitt to the Hospital. Profitt alleged that his injuries were exacerbated by a nurse who moved him from a car into the emergency room without first stabilizing and immobilizing him. Although the identity of that nurse is contested, there is no dispute that the nurse was female.

### B. Procedural History

#### 1. The Underlying State Court Action

Profitt and his wife sued Appalachian, U.S. Nursing, and the three nurses who staffed the emergency room on the night he arrived at the Hospital. Two of those nurses, Sheila Hurt and Roxanna Parsons, were Appalachian employees. The other nurse, Constance Foote, worked for U.S. Nursing. Through his amended complaint, Profitt asserted that Appalachian was vicariously liable for all three nurses' actions, and that U.S. Nursing was vicariously liable for Foote's actions.

Before the state court, no party meaningfully disputed that Foote moved Profitt. Accordingly, Hurt and Parsons moved for summary judgment, contending accurately that "[n]o

witness[es], documents, or other pieces of evidence in the record allege that Sheila Hurt or Roxanna Parsons ever came out of the ER [to assist in moving Profitt].  No witnesses, documents or other evidence in the record allege that Roxanna Parsons ever came into contact with [Profitt] at all."  State Court Mot. for Summ. J., R. 239-7, Page ID #4988–89.  No party opposed that motion, and the state court dismissed Hurt and Parsons as defendants.

As trial neared, the state court granted Appalachian's motion *in limine*, prohibiting the parties from introducing evidence that Hurt or Parsons moved Profitt from the truck to the emergency room.  In granting that motion *in limine*, the state court observed that U.S. Nursing chose not to contest Hurt and Parsons' motion for summary judgment, and that Hurt's and Parsons' liability had been fully adjudicated.

Shortly before trial was set to commence, Appalachian and U.S. Nursing settled with the Profitts.  Appalachian paid the Profitts $2 million, and it incurred $823,522.71 in legal fees and costs.  Appalachian demanded that U.S. Nursing indemnify it, and U.S. Nursing refused.  In response, Appalachian commenced the instant litigation by filing its complaint in federal court.

### 2.  Appalachian's Motion *in Limine*

The district court concluded that for Appalachian to prevail on its indemnity claim, it needed to prove that:  (1) Foote committed a negligent or intentional act; (2) Appalachian suffered liability or damage (including settlement and litigation costs); (3) Foote's alleged act directly produced Appalachian's damage; and (4) the amount of money Appalachian spent to defend against the lawsuit and settle with the Profitts was reasonable.  *See Thompson v. The Budd Co.*, 199 F.3d 799, 807 (6th Cir. 1999).

Appalachian filed a motion *in limine* requesting that the district court "Preclude Testimony Regarding Argument or Testimony that Nurses Hurt or Parsons Transported Mr. Profitt into the Emergency Room . . . ."  Mot. *in Lim.*, R. 239, Page ID #4963.  Appalachian argued that the state court's grant of summary judgment was "binding" in the instant action.  *Id.*  Importantly, Appalachian did not ask the district court to prohibit U.S. Nursing from introducing any evidence at trial that Foote did not move Profitt.  Instead, Appalachian moved the district court to prohibit U.S. Nursing from presenting evidence explicitly implicating Parsons and Hurt.

In its response, U.S. Nursing did not address Appalachian's issue preclusion argument. Instead, U.S. Nursing contended:

> that the alleged conduct of the unknown female outside the Whitesburg ARH emergency room the evening of October 2, 2007, was not a breach of the standard of care *nor did it cause a secondary injury to the already severely injured* Ralph Profitt. It doesn't make any difference who that female was, be it Sheila Hurt, Roxanne Parsons, Constance Foote, or an unknown female ARH employee, she did ***not*** cause a secondary injury nor was she liable to Ralph Profitt.

Opp'n to Mot. *in Lim.*, R. 271, Page ID #5909. Despite asserting that it had "*no* intent to argue that Nurses Hurt or Parsons were liable for the injuries sustained by Ralph Profitt," U.S. Nursing insisted that it was entitled "to defend itself fully by being permitted, as the law requires, to point out to the jury that the unknown female could have been any number of [Appalachian] employees, but *not* Nurse Foote." *Id.* at Page ID #5909, 5913. Thus, it pointed to evidence (1) that Hurt's name, initials, and handwriting are on Profitt's hospital chart, and (2) that, according to Profitt, the nurse who moved him remained with him throughout his initial treatment.

The district court granted Appalachian's motion *in limine*, concluding that "whether Nurse Hurt or Parsons . . . moved Profitt from the pickup to the emergency room . . . was actually litigated and decided by the state court in its summary judgment opinion." Op. and Order, R. 306, Page ID #6256.

U.S. Nursing moved the district court to reconsider that order. In that motion, U.S. Nursing contended that the district court failed to consider that U.S. Nursing had no incentive in the state court action to oppose Hurt and Parsons' motion for summary judgment. The district court rejected that argument, concluding that:

> U.S. Nursing had a full and fair opportunity in state court to respond to the motion for summary judgment filed by Nurses Hurt and Parsons. In that response, they would have been entitled to present any evidence that Nurse Hurt or Parsons moved Profitt. Accordingly, the state-court's ruling in favor of Nurses Hurt and Parsons on this issue was consistent with principles of justice and fairness.

Order, R. 348, Page ID #6462.

Shortly before trial, the district court asked U.S. Nursing what evidence indicated that Hunt or Parsons moved Profitt into the emergency room. U.S. Nursing presented no evidence concerning Parsons. However, its counsel discussed the evidence implicating Hurt that it presented in its initial opposition to Appalachian's motion *in limine*, *i.e.*, that Hurt's initials were on Profitt's chart. U.S. Nursing informed the district court that it hoped to use that evidence at trial. The district court did not reconsider its order granting the motion *in limine*.

### 3. Trial and First Appeal

The district court presided over a seven-day bifurcated trial. During closing arguments for the first phase, Appalachian's counsel asserted that "[t]here's no evidence that Hurt or Parsons were the ones who transported Mr. Profitt, and [U.S. Nursing] hasn't even argued that they were." Trial Tr., R. 357, Page ID #7504. U.S. Nursing did not object to those remarks. In the instant appeal, however, U.S. Nursing contends that those comments were inappropriate and prejudicial because U.S. Nursing was prohibited from making such an argument by the district court's granting of the motion *in limine*.

The jury returned a verdict for Appalachian. In the first phase, the jury determined that Foote moved Profitt from the car to the emergency room, and that she was negligent in so doing. In the second phase, the jury determined that the amounts Appalachian paid to defend against and settle the suit brought by the Profitts were reasonable. The district court entered judgment against U.S. Nursing, finding it liable to Appalachian for $2,823,522.71.

U.S. Nursing appealed. *See Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*, 824 F. App'x 360 (6th Cir. 2020). Although this Court ruled in Appalachian's favor in several respects, it determined that "[t]he district court erred in giving preclusive effect to the state court's summary judgment ruling that neither Hurt nor Parsons was the nurse who transported Profitt into the ER" and that "U.S. Nursing did not have a full and fair opportunity to litigate this issue at the state court level." *Id.* at 366. On the first appeal, U.S. Nursing did not brief, and this Court therefore did not address, Appalachian's allegedly inappropriate comments at closing argument.

The Court remanded the case to "the district court to determine in the first instance whether or not the error in granting the *in limine* motion requires a new trial." *Id.* at 370. The Court remanded the case because "phase 1 of the trial below focused in large part on the identity of the female nurse who transported Profitt into the ER, and the district court is of course familiar with the evidence presented in that proceeding . . . ." *Id.* at 370. Accordingly, the Court concluded, the district court was better situated to determine whether a new trial was warranted.

### 4. Remand and Second Appeal

On remand, the district court granted Appalachian's motion for supplemental briefing. In its brief, U.S. Nursing argued that a new trial was necessary by emphasizing that Hurt, Parsons, and Foote were the only nurses on duty on the night that Profitt arrived, but that it was precluded from introducing evidence that Parsons or Hurt moved Profitt. U.S. Nursing asserted or implied that it was prohibited from introducing evidence of the following:[1]

- Jaworski, one of the men who transported Profitt to the hospital, did not identify Foote as the nurse who moved Profitt;
- the hospital's then-CEO testified that Parsons was in charge of staffing the emergency room front desk;
- Foote's name and initials do not appear on Profitt's chart;
- Hurt's name, initials, and handwriting appear throughout Profitt's chart;
- Hurt could not recall whether she treated Profitt;
- Foote cared for a pediatric patient on the night in question;
- no hospital employees identified Foote as the nurse who transported Profitt into the emergency room;
- Profitt testified that the nurse who brought him in treated him throughout the night;
- English, who also helped transport Profitt to the hospital, testified that the nurse who transported Profitt was about 5'6" tall and weighed between 140 and 180 pounds, but Foote is 5'2" tall and weighed under 130 pounds; and
- English testified that the nurse in question wore white scrubs, but Foote had not worn white scrubs in decades, and some other Appalachian nurses had worn white scrubs in the past.

---

[1]As discussed below, the motion *in limine* did not, in fact, prohibit U.S. Nursing from using much of this evidence.

U.S. Nursing also emphasized that the prejudice caused by the motion *in limine* was compounded when Appalachian's counsel told the jury during his closing argument that "[t]here's *no evidence* that Hurt or Parsons were the ones who transported Mr. Profitt, and *Mr. Miller hasn't even argued that they were*." Br. in Supp. of New Trial, R. 380, Page ID #8468–69 (quoting Trial Tr., R. 357, Page ID #7504). U.S. Nursing contended that in making that argument, Appalachian "exploited" the district court's error. *Id.* at Page ID #8468. "Of course," U.S. Nursing argued, Appalachian "knew that U.S. Nursing was *prohibited* by court order from arguing or introducing evidence to show that Hurt and Parsons transported Profitt. And there *was* evidence that pointed toward Hurt or Parsons, some of which . . . the jury was foreclosed from hearing." *Id.* at Page ID #8480. At a minimum, U.S. Nursing averred, "there was evidence pointing away from Foote and implicating Hurt and Parsons, but U.S. Nursing was prohibited from pointing this out to the jury." *Id.* Thus, U.S. Nursing asserted that Appalachian's closing remarks served to "remind the jury that there were only three nurses and U.S. Nursing had not argued anything regarding two of those nurses . . . leaving only Foote to blame." *Id.* at Page ID #8480–81.

Despite U.S. Nursing briefing the matter, the district court never addressed whether Appalachian's allegedly improper closing remarks prejudiced U.S. Nursing. The district court did, however, address U.S. Nursing's argument regarding the impact of the precluded evidence. Although the district court acknowledged that "[t]he identity of the nurse who transported Profitt into the ER was a central issue in this case," it determined that "U.S. Nursing has not proved the Court's error affected its substantial rights or that admitting any of the evidence that U.S. Nursing now cites would have caused a different outcome at trial." Op. and Order, R. 385, Page ID #8538. The district court highlighted that the motion *in limine* did not "ask the Court to prohibit U.S. Nursing from introducing any evidence at trial that *Nurse Foote did not* move Profitt. The issue raised by Appalachian's motion was whether U.S. Nursing could present evidence or argue that *Nurses Parsons or Hurt did* move Profitt." *Id.* at Page ID #8534. Thus, the district court held, its erroneous evidentiary ruling did not preclude much of the evidence that U.S. Nursing highlighted in its brief.

In holding that the erroneous ruling did not necessitate a new trial, the district court emphasized that "[t]he only parties that remembered the identity of the nurse who moved Profitt into the ER were Profitt and English." *Id.* at Page ID #8539. English testified that he was certain that Foote was the nurse in question. Profitt testified that he was "75 percent positive" that it was Foote. *Id.* (quoting Trial Tr., R. 355, Page ID #7114). Although Profitt was less confident than English, the district court observed that Profitt's testimony included other corroborating details. Profitt testified that the woman who moved him did not use local "slang" and "talked like she wasn't from around here," and that she was "fairly petite." *Id.* at Page ID #8539–40 (quoting Trial Tr., R. 355, Page ID #7113). Those details apply only to Foote, who is 5'2", purports to have never weighed over 130 pounds, and had only spent two months in Eastern Kentucky at the time Profitt arrived at the Hospital. In contrast, Profitt testified that Parsons spoke "like she was from around here," and that he would not describe Hurt as being "petite." Trial Tr., R. 355, Page ID #7113–15.

The district court also discounted the importance of other evidence that U.S. Nursing argued could have changed the trial's outcome. First, responding to U.S. Nursing's emphasis on Profitt's testimony that the nurse who brought him in treated him later, the district court observed that "[t]he evidence is undisputed that multiple nurses treated Profitt after he was inside the ER." Op. and Order, R. 385, Page ID #8541. Second, responding to evidence that Hurt's initials were on Profitt's chart, the district court highlighted that "[t]he undisputed evidence is that the initials of all the nurses who treated Profitt would not appear in his medical file." *Id.* at Page ID #8542. Third, responding to testimony that the nurse who moved Profitt wore white scrubs, the district court emphasized that U.S. Nursing presented no evidence that Hurt or Parsons wore white scrubs. Accordingly, the district court concluded that its erroneous ruling did not warrant a new trial. As mentioned above, it never addressed the impact of Appalachian's allegedly improper remarks. U.S. Nursing's timely appeal followed.

## II.  DISCUSSION

### A.  Standard of Review

This Court reviews the denial of a motion for a new trial for abuse of discretion.  *In re Brown*, 342 F.3d 620, 627 (6th Cir. 2003); *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000).  A district court abuses its discretion if it "commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact."  *King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017) (quoting *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008)).

### B.  Analysis

Federal Rule of Civil Procedure 61 provides that:

> Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order.  At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Fed. R. Civ. P. 61.  Accordingly, the Court may "overturn the jury's verdict based on . . . evidentiary errors only if they were not harmless."  *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 409 (6th Cir. 2006) (citing *United States v. Smithers*, 212 F.3d 306, 317 (6th Cir. 2000)).  "[T]he party that 'seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted.'"  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (quoting *Palmer v. Hoffman*, 318 U.S. 109, 116 (1943)).  The Court considers different factors when determining whether prejudice resulted from an erroneous evidentiary ruling and from improper closing remarks.

#### 1.  Precluded Evidence

##### a.  Determining Prejudice

Before the district court, the parties disagreed on the standard for determining whether an evidentiary error was prejudicial.  Appalachian relied on this Court's ruling in *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882 (6th Cir. 2004), to argue that the district court should not grant a

new trial "unless the [erroneously excluded] evidence would have caused a different outcome at trial." Br. in Opp'n to New Trial, R. 379, Page ID #8452. U.S. Nursing, by contrast, contended that the district court had to grant a new trial if it lacked "fair assurance" that the outcome of the trial was not affected by its error. Reply Br. in Supp. of New Trial, R. 382, Page ID #8502. The district court declined to resolve the issue, asserting that "under any of the standards, U.S. Nursing has not proved that a new trial is warranted." Op. and Order, R. 385, Page ID #8538.

In *Beck v. Haik*, this Court observed that the Circuit had issued conflicting rulings on how to determine whether an evidentiary error was harmful. 377 F.3d 624, 635 (6th Cir. 2004), *overruled on other grounds* by *Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009). The Court noted that in *Schrand v. Fed. Pac. Elec. Co.*, a published opinion, the Court adopted the "fair assurance" test, holding that "[i]f one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Beck*, 377 F.3d at 634 (quoting *Schrand v. Fed. Pac. Elec. Co.*, 851 F.2d 152, 157 (6th Cir. 1988), *abrogated on other grounds by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)). Although some cases after *Schrand* applied a tougher standard than the "fair assurance" test, the *Beck* Court concluded that *Schrand* controlled because it is a published opinion, and a "prior [published] decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Id.* at 635 (quoting *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001)).

Years later, a panel determined that the Supreme Court's decision in *Shinseki v. Sanders*, 556 U.S. 396 (2009), required that the panel overrule *Beck*. *A. K. by & Through Kocher v. Durham Sch. Servs., L.P.*, 969 F.3d 625, 629 (6th Cir. 2020) (citing *Shinseki*, 556 U.S. at 410–11). In *Shinseki*, the Supreme Court observed that "the party that 'seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted.'" *Shinseki*, 556 U.S. at 409 (quoting *Palmer v. Hoffman*, 318 U.S. 109, 116 (1943)). Based on *Shinseki*, in *A.K.*, a panel of this Court purported to overrule *Beck*, concluding that "*Shinseki* holds that in a civil case, the tie goes to the verdict." *A.K.*, 969 F.3d at 630.

However, the Supreme Court in *Shinseki* said nothing about the standard that this Court must apply to determine whether there was prejudice. *Shinseki* indicated only that the appellant in a civil case bears the burden of demonstrating prejudice in a motion for a new trial. *Shinseki*, 556 U.S. at 409. Because *Shinseki* did not address which of these standards is correct, the Court is bound by its decision in *Schrand* and must use the "fair assurance" test. *See Darrah*, 255 F.3d at 309–10; *Salmi v. Sec'y of Health and Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

### b. *The Impact of the Precluded Evidence*

U.S. Nursing contends that the district court abused its discretion when it determined that the erroneous preclusion of evidence did not affect U.S. Nursing's substantial rights. Throughout its brief and reply brief, however, U.S. Nursing confuses the issue by conflating *all* its evidence and argument that Foote did not transport Profitt with the evidence that the district court *excluded* when it granted Appalachian's motion *in limine*. For example, U.S. Nursing devotes considerable space to explaining why the district court should have admitted English's testimony that the nurse who moved Profitt wore white scrubs. This argument is inapposite to this appeal because the district court did not exclude such testimony. Before determining whether the district court abused its discretion, therefore, the Court must first clarify the practical impact of the district court's evidentiary ruling.

In denying a new trial, the district court correctly observed that Appalachian's motion *in limine* "did not . . . ask the [district court] to prohibit U.S. Nursing from introducing any evidence at trial that *Nurse Foote did not* move Profitt. The issue raised by Appalachian's motion was whether U.S. Nursing could present evidence or argue that *Nurses Parsons or Hurt did* move Profitt." Op. and Order, R. 385, Page ID #8534. Therefore, contrary to what U.S. Nursing implies on appeal, it was *not prohibited* from introducing much of the evidence it highlights in its briefs.

Indeed, at trial, the district court admitted several pieces of evidence suggesting that Foote might not have moved Profitt. Such evidence included:

- Foote's testimony that she did not move Profitt;

- testimony that three female nurses—Foote, Parsons, and Hurt—staffed the emergency room on the night that Profitt arrived;

- testimony and record evidence that Foote's initials do not appear on Profitt's chart, but that Hurt's initials do appear on it;

- evidence that Foote treated a pediatric patient on the night that Profitt arrived and that her initials appeared on that patient's chart, and Profitt's testimony that he believed that the nurse who transported him into the ER stayed with him for a sustained period of time;

- English's testimony that the woman who moved Profitt wore white scrubs, and Foote's testimony that she had not worn white scrubs since 1982; and

- Foote's testimony that English's description of Foote's weight and height was inaccurate.

In its closing argument, moreover, U.S. Nursing argued explicitly that that jury should conclude that Foote did not move Profitt because:

- sixteen female employees were on duty at the hospital on the night that Profitt arrived;

- Profitt believed that the nurse who moved him remained with him;

- Foote never signed Profitt's chart;

- English testified that the nurse in question wore white scrubs, and Foote never wore white scrubs;

- English testified that the nurse in question was 5'6" and weighed between 140 and 180 pounds, but Foote was 5'2" and under 130 pounds; and

- Foote tended to another patient on the night that Profitt was treated.

Thus, of the evidence that U.S. Nursing argues or implies would have changed the trial's outcome, the district court's erroneous ruling excluded only the following: (1) testimony that Parsons was in charge of staffing the emergency room front desk; (2) testimony from Hurt that she could not recall whether she treated Profitt; (3) evidence that Hurt or Parsons wore white scrubs on the night that Profitt arrived; and (4) argument pointing the finger directly at Hurt or Parsons. Therefore, in determining whether the district court abused its discretion when it determined that the preclusion of evidence did not affect U.S. Nursing's substantial rights, this Court will only consider the importance of the evidence that was actually excluded.

The excluded evidence does very little to support U.S. Nursing's argument that Foote did not move Profitt. The district court granted the motion *in limine* after discovery closed. Therefore, U.S. Nursing presumably had all the evidence it would have presented had the district court denied the relevant motion *in limine*. Nevertheless, U.S. Nursing has furnished no evidence to this Court or to the district court: (1) that Hurt or Parsons wore white scrubs on the night Profitt arrived; or (2) that the nurse who staffed the desk was the nurse who moved Profitt.[2]

In light of the above, we find that the district court did not abuse its discretion in determining that it had a "fair assurance . . . that the judgment was not substantially swayed by" its erroneous preclusion of evidence. *Beck*, 377 F.3d at 634 (quoting *Schrand*, 851 F.2d at 157). As the district court concluded:

> The evidence on this issue was not "closely balanced." The only eyewitnesses who recalled the nurse's identity identified Nurse Foote as the nurse who moved Profitt, and they provided a reasoned explanation that supported that recollection. There is simply no evidence from which the jury could fairly infer that Nurse Hurt or Parsons moved Profitt.

Op. and Order, R. 385, Page ID #8545. That conclusion is buttressed by the fact that Profitt accurately recalled Foote's accent, manner of speech, and physical build. Accordingly, we cannot find that the district court "commit[ed] a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact," *King*, 852 F.3d at 579 (quoting *Info-Hold*, 538 F.3d at 454), when it determined that it had a fair assurance the motion *in limine* did not substantially sway the jury's verdict. *See Beck*, 377 F.3d at 634.

## 2. Closing Argument

U.S. Nursing avers that it is entitled to a new trial in part because Appalachian's attorney made allegedly improper comments during his closing argument.

When we remanded this case, we directed the district court to "determine in the first instance whether or not the error in granting the *in limine* motion requires a new trial."

---

[2]U.S. Nursing dedicates much argument to *whether* Parsons staffed the front desk, but provides no evidence showing that the answer to that question is relevant to determining whether Parsons moved Profitt.

*Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*, 824 F. App'x 360, 370 (6th Cir. 2020). We must first determine whether those instructions permitted the district court to examine the prejudicial impact of Appalachian's closing argument.

U.S. Nursing on remand and on appeal briefed the issue of the prejudicial impact of Appalachian's closing arguments. Although Appalachian observes accurately that "U.S. Nursing did not argue that [Appalachian's] comment, with its supposedly devastating effect, required reversal in its briefing on the *prior appeal*," Appellee's Br. at 33 (emphasis added), it does not argue that the issue is beyond the scope of this Court's review. The district court, meanwhile, never addressed U.S. Nursing's argument at all.

The Court finds that the issue is within the scope of this appeal. Our remand required the district court to consider the *effects* of its erroneous evidentiary ruling. *See Shinseki*, 556 U.S. at 409. Had the district court denied the relevant motion *in limine*, either Appalachian would not have made the comments at issue during its closing argument, or the comments would not have carried the same weight. Accordingly, whether Appalachian's comments require a new trial falls within the scope of our remand. The issue of the impact of the comments on the outcome of the trial was integral to the issue of whether the erroneously granted motion *in limine* affected U.S. Nursing's substantial rights. *See* Fed. R. Civ. P. 61. Once U.S. Nursing briefed the issue on remand, the district court should have addressed it.

Where "counsel's closing argument was improper, and if 'there is a reasonable probability that the verdict of [the] jury has been influenced by such conduct, it should be set aside.'" *Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998) (alteration in original) (quoting *Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980)). However, when, as in this case, counsel does not object to the relevant comments at trial, the "failure to object 'raise[s] the degree of prejudice which must be demonstrated' in order for this Court to grant the request for a new trial." *CFE Racing Prod., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 590 (6th Cir. 2015) (alteration in original) (quoting *Strickland*, 142 F.3d at 358 (6th Cir. 1998)). This Court has "found statements that were 'egregious' or 'outrageous' to have met this standard." *Id.* (quoting *Strickland*, 142 F.3d at 358). For example, in *Igo v. Coachmen Indus. (Sportscoach Corp. of Am. Div.)*, this Court determined that the "outrageous conduct of [the

plaintiffs'] attorney" was sufficient to warrant reversal. 938 F.2d 650, 651 (6th Cir. 1991). That conduct included violating an evidentiary ruling; referring to the defendant's wealth in an "obvious[]" ploy to demonstrate that the defendant could pay a hefty verdict; and making "wild, unsubstantiated attacks" against the defendant. *Id.* at 652–54. The attorney's conduct in *Igo* was so inappropriate that the Court referred him to his state bar association for potential discipline. *Id.* at 655.

In *Strickland*, by contrast, the Court considered the plaintiff's closing argument, which included an allegedly inappropriate "appeal to class prejudice and pandering to the perception that corporations wield disparate power," and determined that "those remarks were not so prejudicial as to mandate a new trial, especially where no objection was raised at the first trial." *Strickland*, 142 F.3d at 359; *see also Kokesh v. Am. S.S. Co.*, 747 F.2d 1092, 1095 (6th Cir. 1984) ("[W]hile some of the remarks made by plaintiff's counsel during closing argument were inappropriate, they were not so egregious as to require a new trial when defense counsel did not make a contemporaneous objection.").

In this case, Appalachian's counsel misled the jury when it argued that "[t]here's no evidence that Hurt or Parsons were the ones who transported Mr. Profitt and [U.S. Nursing] hasn't even argued that they were." Trial Tr., R. 357, Page ID #7504. U.S. Nursing did not introduce such evidence only because the district court prohibited it from so doing. *Cf. Igo*, 938 F.2d at 653 (holding that the plaintiffs' counsel committed misconduct when, "after the district court had granted a motion in limine excluding all references to the 1984 recall of the motor home, Plaintiffs' counsel referred to the recall before the jury.").

Unfortunately, the district court, in its order now on appeal, failed to address U.S. Nursing's argument on this topic, even though improper comments made during closing arguments can mandate a new trial. *See, e.g.*, *id.*; *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 555–56 (6th Cir. 2004). The Court finds, however, that although the comments were inappropriate, they do not mandate a new trial. First, Appalachian's counsel's behavior does not rise to the level of being "so egregious as to require a new trial when defense counsel did not make a contemporaneous objection." *Kokesh*, 747 F.2d at 1095. It does not compare, for example, to the attorney in *Igo*, whose behavior was so "outrageous" that this Court referred him

to his state bar association for potential discipline.  *Igo*, 938 F.2d at 655.  Second, there is sufficient evidence to suggest that Foote moved Profitt in order for us to conclude that closing remarks were "not so prejudicial as to mandate a new trial . . . ."  *Strickland*, 142 F.3d at 359. Put simply, Appalachian was extremely likely to prevail regardless of those comments.

### III.  CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** the district court's order denying a new trial.