NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0357n.06

Case No. 23-5850

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 15, 2024
KELLY L. STEPHENS, Clerk

DONNA DUTTON, )
)
    Plaintiff - Appellant, )
)
v. )  ON APPEAL FROM THE UNITED
)  STATES DISTRICT COURT FOR THE
)  EASTERN DISTRICT OF KENTUCKY
JIMMY SHAFFER, et al., )
)
    Defendants - Appellees. )  OPINION
)

Before: GIBBONS, WHITE, and MURPHY, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Donna Dutton, a judge, moves to preliminarily enjoin Kentucky's Judicial Conduct Commission from enforcing the state's Judicial Code of Conduct, arguing that certain provisions of the Code are unconstitutional. Because the district court abused its discretion in its assessment of whether Judge Dutton would suffer irreparable harm, we vacate its decision and remand the case for a fresh appraisal of Dutton's request.

I.

A.

Donna Dutton serves as a district court judge in Kentucky's 53rd Judicial Circuit, a position she has held since 2006. Her husband is also an attorney.

In 2019, Dutton's husband accused an attorney at his law firm of theft. After Dutton's husband confronted him, the attorney repaid the allegedly stolen funds. Dutton's husband then complained to the Kentucky Bar Association, but the KBA dismissed his complaint, and Dutton's husband pursued no further civil or criminal remedies.

Several months later, the accused attorney — now practicing law elsewhere — appeared as defense counsel in a case assigned to Judge Dutton. The attorney moved for Dutton's recusal, but she refused. From the bench, Dutton accused the attorney of stealing from her husband, and she warned the attorney's co-counsel that the attorney would not "be conflicted out forever." DE 10-1, Agreed Order of Suspension, Page ID 140. The attorney interpreted this statement as a threat, and he sought courtroom video of Dutton's remarks. Dutton attempted to suppress the video by pressuring the county clerk and a fellow judge to withhold access. That effort failed, and Dutton ultimately recused herself from the case.

The foregoing episode led to a complaint against Dutton with Kentucky's Judicial Conduct Commission (the "Commission" or "JCC"), the body tasked with enforcing Kentucky's Judicial Code of Conduct (the "Code"). After an investigation, the Commission found that Dutton's actions violated Rules 1.1, 1.2, 1.3, 2.2, 2.4, 2.8, 2.9, and 2.11 of the Code. The JCC publicly reprimanded Dutton, and it suspended her from her duties for two weeks without pay. Dutton consented to the Commission's punishment in lieu of formal proceedings.

B.

In 2022, Dutton ran for reelection. Her opponent shared an office and some administrative resources, like secretarial staff, with the attorney her husband had accused of theft.

Less than a month before election day, a local newspaper ran an article discussing Dutton's discipline by the JCC. Given an opportunity to comment, Dutton made the following statement:

> That issue involved the theft of a large sum of money by an attorney who also happens to practice law with my opponent . . . . I let my personal feelings about the theft interfere with my courtroom conduct and for that I apologize. No litigants were affected by my actions, and the only person hurt was me.

I'm proud of the job I've done in my 16 years on the bench and have worked every day to ensure the court system protects our families and community.

DE 10-3, *The Sentinel-News* Article, Page ID 158.

Dutton's statement generated yet another complaint to the JCC. In a notice letter, the Commission informed Dutton of the complaint and offered her an opportunity to respond. Dutton's response refuted the charges. To settle the matter, the Commission proposed a public reprimand, asserting that Dutton's conduct violated Rules 1.2,[1] 2.4(B),[2] and 4.1(11)[3] of the Code. When Dutton's counsel asked the Commission if the draft reprimand was final, the Commission's attorney responded that, "[i]f you have proposed changes, send them to me and I will discuss with the Commission." DE 10-5, Mando Email, Page ID 168.

Rather than negotiate with the Commission, Dutton filed suit in the United States District Court for Eastern District of Kentucky, alleging that Rules 1.2, 2.4(B), and 4.1(11) of Kentucky's Judicial Code of Conduct violate the First Amendment, both facially and as applied to Dutton's conduct. Dutton then moved the district court for a preliminary injunction preventing the JCC from formally disciplining her for the duration of the proceedings. The district court denied Dutton's motion, and Dutton timely appealed. We exercise jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

---

[1] Rule 1.2 provides that, "[a] judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Ky. R. Sup. Ct. 1.2.

[2] Rule 2.4(B) provides that, "[a] judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment." Ky. R. Sup. Ct. 2.4(B).

[3] Rule 4.1 provides that, "a judge or a judicial candidate shall not: . . . (11) knowingly, or with reckless disregard for the truth, make any false statement of material fact[.]" Ky. R. Sup. Ct. 4.1(11).

II.

Faced with a request for a preliminary injunction, the district court considers four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (quoting *PACCAR Inc. v. TeleScan Techs., LLC*, 319 F.3d 243, 249 (6th Cir. 2003)). Typically, the court conducts this inquiry "as a balancing test," weighing "the strength of the four factors against one another." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326 (6th Cir. 2019). Yet that best practice comes with two relevant caveats. First, the presence of irreparable injury is an "indispensable" factor. *Id.* And second, "[w]hen a party seeks a preliminary injunction on the basis of a potential violation of the First Amendment, the likelihood of success on the merits will often be the determinative factor." *Jones v. Caruso*, 569 F.3d 258, 265–66 (6th Cir. 2009) (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1988)). This is "because the question[] of harm to the parties . . . generally cannot be addressed properly in the First Amendment context without first determining if there is a constitutional violation." *Connection Distrib.*, 154 F.3d at 288. We review the district court's denial of a preliminary injunction for abuse of discretion. *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 763 (6th Cir. 2019).

III.

The district court denied Dutton's motion based on its analysis of only one of the four preliminary injunction factors: irreparable injury. Relying on our decision in *Fischer v. Thomas*, 78 F.4th 864 (6th Cir. 2023) (*Fischer II*), the district court eschewed analysis of Dutton's likelihood of success on the merits, of the risk of substantial harm to others, and of the public

interest, and it instead found that Dutton was not entitled to injunctive relief strictly because she could not show that she faced a threat of imminent, irreparable harm. But *Fischer* is distinguishable because it did not involve a continuing violation. Because its analysis does not apply here, and because the district court should have analyzed Dutton's likelihood of success on the merits as logically antecedent to a finding of irreparable injury, we vacate the district court's order and remand for consideration of all four preliminary injunction factors together.

In *Fischer*, two Kentucky judicial candidates sued the JCC after they learned that the Commission planned to investigate their campaign speech. *Id.* at 866. The candidates had identified as "conservative[s]" and "Republican[s]" in their campaign literature, and both had received and accepted endorsements from pro-life organizations. *Id.* at 867. In a notice letter, the Commission informed the candidates of allegations that their speech violated Rules 4.1(A)(6), (A)(7), and (A)(13) of the Code, which maintain the non-partisan nature of Kentucky's judicial elections. *Fischer v. Thomas*, 52 F.4th 303, 306 (6th Cir. 2022) (per curiam) (*Fischer I*). The Commission did not identify the specific statements at issue or the complaining party. The letter simply asked the candidates to formally respond in writing and invited them to attend an informal conference to discuss the allegations in greater detail. *Id.*

Rather than wait for the conference, which was set to occur only two weeks before the upcoming election, the candidates sued, arguing that the First Amendment protected their allegedly infringing speech. *Fischer II*, 864 F.4th at 867. The candidates moved for a preliminary injunction that would both allow their continued campaign speech and block the Commission from initiating formal disciplinary proceedings for the duration of their suit. *Id.* The district court denied the candidates' request, and the candidates appealed. *Id.*

We addressed the candidates' appeal in two stages. First, in *Fischer I*, we addressed the candidates' motion for emergency injunctive relief under Federal Rule of Appellate Procedure 8(a)(2), which asked us to enjoin the Commission from initiating formal proceedings while the candidates' appeal of the preliminary injunction was pending. *Fischer I*, 52 F.4th at 307–13; *see* FED. R. APP. P. 8(a)(2). Analyzing the candidates' likelihood of success on the merits, we found that "[w]hen a judicial commission sends vague and threatening letters to candidates on the eve of election, it puts the candidates to a choice between self-censorship and uncertain sanctions." *Fischer I*, 52 F.4th at 313. Because "the First Amendment protect[ed] the candidates from having to make such a choice," we found that the candidates were likely to succeed on the merits. *Id.* And eleven days before the election, we ordered the Commission to hold off on initiating formal or informal proceedings. *Id.*

Election day came and went, and both candidates lost their respective races. *Fischer II*, 78 F.4th at 867. With the election over, and with the emergency injunction's rationale reaching its expiration date, we took up the candidates' original request for a preliminary injunction in *Fischer II*. But rather than begin with the candidates' likelihood of success on the merits, we began by analyzing irreparable injury, an indispensable showing for those seeking a preliminary injunction. *Id.* at 868. Although the former candidates alleged irreparable harm in four ways, we found that none sufficed to warrant injunctive relief.

As relevant to this suit, we rejected two of the candidates' four theories of irreparable harm due to the nature of their speech (campaign-related) and the timing of our consideration of their request (after the campaign). *Id.* at 868–69. The former candidates claimed that the Commission's formal proceedings would irreparably harm them first by "chill[ing] their and other candidates' speech in future campaigns," and second by "punish[ing] them for their past protected speech."

- 6 -

*Id.* at 868. We rejected the former theory of harm because there was no ongoing election, and the former candidates had not indicated that there would be another election before the case reached final judgment. *Id.* Thus, the alleged "chill" over the former candidates' speech rights was not "immediate," and the candidates were free to "renew their request for preliminary relief" when an election "loom[ed]." *Id.* We rejected the second theory of harm because "the only speech threatened by the Commission's proceedings had already occurred." *Id.* at 869. Thus, neither formal proceedings nor sanction by the Commission would "affect the former candidates' ability to speak" moving forward, making the alleged harm non-irreparable (i.e., compensable by damages). *Id.* ("[I]f a court finds that the past speech was protected, then the appropriate remedy is damages, not an injunction.").

Here, the district court found a lack of irreparable injury — and denied Dutton a preliminary injunction — by following our *Fischer II* analysis to a fault. The court rejected Dutton's contention that the Commission's formal proceedings would chill her speech by quoting from *Fischer II* itself, concluding that "because 'there's no ongoing election' and [Dutton] has not 'indicated that there will be before the case reaches final judgment . . . the risk of chill isn't immediate.'" DE 17, Op. & Order, Page ID 213–14 (quoting *Fischer II*, 78 F.4th at 868). Similarly, the court rejected Dutton's contention that formal proceedings would unconstitutionally punish her for protected speech based on its finding that "the only speech threatened by the Commission's proceedings has already occurred." *Id.* at 213 (quoting *Fischer II*, 78 F.4th at 869). Because "Dutton does not allege that she intends to engage in similar speech anytime soon," the court concluded, "the appropriate remedy" for any abridgment of Dutton's protected speech "is damages, not an injunction." *Id.* (quoting *Fischer II*, 78 F.4th at 869).

But the district court's analysis fails to recognize that Dutton's situation differs from that of the former candidates in *Fischer II*. Unlike the plaintiffs in *Fischer*, who wanted to self-identify as Republicans and accept the endorsement of pro-life groups only insofar as they were running for judicial office, Dutton wants to express her threatened speech outside the election season. Further, Dutton is a sitting judge, so her speech — unlike that of the former candidates — is subject to the Code on a go-forward basis. The district court's observation that there is no looming election is therefore irrelevant to deciding whether Dutton's speech is currently chilled. Moreover, Dutton explicitly alleges in her complaint that absent a Commission enforcement action, "[s]he will respond to media inquiries" regarding her 2020 reprimand "in the same way." DE 1, Compl., Page ID 10 ¶ 35. Thus, the district court's conclusion that Dutton "does not allege that she intends to engage in similar speech anytime soon" is incorrect. DE 17, Op. & Order, Page ID 213. So too with the district court's conclusion that "the only speech threatened by the Commission's proceedings has already occurred." *Id.*

What is clear from the record and from the parties' briefing is that Dutton wants to continue telling her side of the story in a way that the Commission finds objectionable under the Code. Equally clear from the record is the fact that the Commission stands at the ready to discipline Dutton under its view of the Code, chilling Dutton's speech. *See Schlissel*, 939 F.3d at 764. Whether the Commission's application of the Code to Dutton's speech in fact violates the First Amendment is a question we reserve for a later juncture. For now, it is sufficient to say, as we have many times before, that "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (citing *ACLU of Ky. v. McCreary County*, 354 F.3d 438, 445 (6th Cir. 2003)); *see also Connection Distrib.*, 154 F.3d at 288 ("With regard to the factor of irreparable injury . . . it is well-settled that 'loss of First

Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). Thus, "insofar as a successful showing on the first [preliminary injunction] factor mandates a successful showing on the second factor," the district court should have assessed Dutton's likelihood of success on the merits before reaching the irreparable injury question.[4] *ACLU of Ky.*, 354 F.3d at 445. By failing to do so, the district court abused its discretion. *Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*, 68 F.4th 324, 331 (6th Cir. 2023) (district court abuses its discretion by "misapplying the correct legal standard" (quoting *King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017))).

IV.

That leaves the question of remedy. Dutton asks us to reverse the district court and remand with instructions to enter the requested preliminary injunction, a course that would require us to "resolve the ultimate question" of Dutton's likelihood of success on the merits. *Schlissel*, 939 F.3d at 770. Yet while we review the district court's assessment of likelihood of success on the merits de novo, perhaps counseling in favor of Dutton's suggested approach, "we grant the district court substantial deference in its weighing of the preliminary injunction factors." *Id.* Accordingly, the proper course in this case is to vacate the district court's decision and remand with instructions to conduct the preliminary injunction analysis in its entirety, keeping in mind that "when a party seeks a preliminary injunction on the basis of a potential constitutional violation, likelihood of

---

[4] Because Dutton alleges a continuing constitutional violation, the district court should have first considered her likelihood of success on the merits. *See Connection Distrib.*, 154 F.3d at 244. However, assessing the first prong of the preliminary injunction analysis is not always essential where there is no allegation of a continuing violation. In *Fischer II*, for example, the plaintiffs were no longer subject to the Code of Judicial Conduct. 78 F.4th at 868–69. As a result, the panel concluded that there was no risk of irreparable injury, regardless of whether the plaintiffs were likely to succeed on the merits. *Id.* Accordingly, first assessing the "likelihood of success" prong may be unnecessary in other cases where there is no ongoing risk of irreparable harm.

success on the merits will often be the determinative factor." *Obama for Am.*, 697 F.3d at 436 (quoting *Jones*, 569 F.3d at 265).

For the foregoing reasons, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.